OPINION
Appellant, Hazel Moles, appeals the judgment entry of the Lake County Court of Common Pleas granting appellee's, The Mill-Rose Company, motion for summary judgment.
The factual record reveals that appellant was employed by appellee from 1981 through 1994, when she retired. From 1981 until 1986, appellant assembled wire chimney and flue brushes, which required beading Scotch-Grip (TM) 1870 industrial adhesive ("3M glue" or "glue") along the metal stem of each brush. In 1986, appellant transferred to a different department, but occasionally helped make brushes when needed.
Throughout her employment with appellee, it was unavoidable for assemblers not to get the 3M glue on their hands during the assembly process without the use of gloves. The 3M glue was used in oil can size containers and approximately seventy brushes could be made from one container. Apparently, appellant used between six and seven cans of glue per day. The record further indicates that gloves were tried by the assemblers in certain experimentations, but were discontinued because they ruined the brushes. Additionally, in order to get the glue off their hands, the brush assemblers had to use a solvent.
Regarding the glue, it was a product manufactured by 3M and contained a chemical known as N-hexane. Appellant indicated that the glue produced a bad smell and the assemblers did not like the smell of it. In order to accommodate the complaints of employees about the smell of the glue, management permitted a rear garage door to be opened in the summertime to provide additional ventilation. The facility contained an overhead fan and air-conditioning vents surrounding appellant's workstation during the time she was assigned to the assembly department. Despite the olfactory problems, no employee wore a respirator. During the entire time that appellant used the glue, she did not complain to her immediate supervisor, Marty Fornadel, or other managers about any concerns she had about using the glue.
Not until November 25, 1985, did the Occupational Safety and Health Administration ("OSHA") require that hazardous chemical users be provided with a material safety data sheet ("MSDS") describing the health risks, precautions, adverse symptoms, and ingredients associated with a particular product. Prior to the implementation of the MSDS by OSHA, the only means of obtaining information regarding a potentially toxic substance in an industrial product was to telephone the product's manufacturer. There is no evidence in the record that 3M provided an MSDS for the glue used by appellant prior to the one published in June 1994, which was three months after her retirement.
In 1991, an employee committee articulated concerns to appellee's management regarding the air and environment at the facility after a co-worker had died of cancer and another became ill. Responding to those concerns, appellee hired an environmental health company to test the air for toxins by placing a badge on an assembler who worked with the 3M glue. The air also was tested in 1996. After each day-long air test, the airborne concentrations of toxins was within prescribed health limits.
Due to a loss of sensation in her feet, appellant sought medical attention while working for appellee; however, the exact date that such attention was first sought is unclear. Yet, approximately five months after her retirement, appellant was diagnosed with having polyneuropathy. After diagnosis, Dr. Berstein, an occupational expert, attributed the diagnosis to her contact with the 3M glue, which contained N-hexane.
On March 24, 1997, appellant filed a complaint against appellee for intentionally and deliberately exposing her to harmful chemicals resulting in the diagnosis of polyneuropathy. On April 29, 1998, appellee filed a motion for summary judgment. In a judgment entry filed August 13, 1998, the trial court granted appellee's motion for summary judgment on the basis that appellee demonstrated an absence of a genuine issue of material fact concerning appellant's failure to establish that appellee intended to commit a tort against her.
Appellant timely appealed the trial court's judgment entry granting summary judgment in favor of appellee, and now asserts the following assignment of error:
 "The trial court committed prejudicial error in granting summary judgment in favor of [appellee,] The Mill-Rose Company."
 In support of her assignment of error, appellant claims that reasonable minds could differ, based upon the evidence presented, as to whether appellee committed an intentional tort against her pursuant to the holding in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115.
A motion for summary judgment will be granted when:
 "[I]t appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).
 "[T]he burden of establishing that the material facts are not in dispute and that no genuine issue of fact exists is on the party moving for summary judgment." Fyffe, 59 Ohio St.3d at 120. Moreover, an appellate court must review a motion for summary judgment in the light most favorable to the non-moving party. Id. In the context of an intentional tort action by an employee against his or her employer, and when the defendant-employer moves for summary judgment, the employee "must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee." Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus.
In Fyffe, the Supreme Court of Ohio articulated the standard to be applied for purposes of establishing "intent" in an intentional tort action by an employee against his or her employer:
 "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." (Emphasis added.) 59 Ohio St.3d at paragraph one of the syllabus.
 The court further stated that "the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. at paragraph two of the syllabus. In addition, an employer who is proven to have acted negligently or recklessly cannot be said to have acted with substantial certainty, which is a higher standard to prove. Van Fossen, 36 Ohio St. 3d at paragraph six of the syllabus.
In the instant matter, the factual record shows that appellant worked for appellee for a number of years assembling various brushes, causing her to be in constant contact with 3M glue containing a chemical known as N-hexane. The glue apparently gave off such a bad smell that appellant and her co-workers complained about it to appellee's management staff. In response, management permitted a loading dock door to be opened in the summer months to provide better ventilation. Additionally, after an employee had died of cancer and another became ill, appellee ordered the air to be tested for toxins on two occasions. It is uncontested that the air quality tests resulted in favorable readings. Importantly, appellant never complained to appellee about any concerns she had about the glue and never requested to use gloves or a respirator. At some point during her employment with appellee, she sought medical attention for problems she was experiencing with her feet, but never communicated any of her symptoms to managers for appellee.
The record also shows that five months after retiring from her employment with appellee, she was diagnosed with polyneuropathy, which was attributed to her exposure to the 3M glue containing N-hexane. However, appellant failed to present evidence indicating that appellee actually knew that the glue contained N-hexane or that N-hexane could cause her condition. Indeed, the only evidence produced by appellant indicating that appellee should be on notice of the condition of polyneuropathy consisted of an MSDS warning on the glue, which stated the following:
 "WHILE THE FOLLOWING EFFECTS ARE ASSOCIATED WITH ONE OR MORE OF THE INDIVIDUAL INGREDIENTS IN THIS PRODUCT AND ARE REQUIRED TO BE INCLUDED ON THE MSDS BY THE U.S. OSHA HAZARD COMMUNICATION STANDARD, THEY ARE NOT EXPECTED EFFECTS DURING FORESEEABLE USE OF THIS PRODUCT.
 "Peripheral Neuropathy: signs/symptoms can include tingling of extremities, incoordination, numbness, weakness and tremors."
 The MSDS warning contained on the 3M glue containers falls far short of demonstrating that appellee knew that if appellant was subjected to contact with the glue, then there was a substantial certainty that she would develop polyneuropathy in her feet.
In reviewing the facts of this case, we conclude that reasonable minds can only conclude that each of the three elements of the Fyffe intent test was not met. Therefore, appellant's assignment of error is not well-taken, and the judgment of the Lake County Court of Common Pleas is affirmed.
NADER, J., O'NEILL, J., concur.