[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Susan Bauer and Gina Schacker appeal from a judgment of the Greene County Court of Common Pleas, which granted summary judgment in favor of Charming Shoppes, Inc., d.b.a. Fashion Bug ("Fashion Bug").
The facts and procedural history of the case are as follows.
On April 20, 1995, Bauer was the manager and Schacker was an employee at the Fashion Bug clothing store in Beavercreek, Ohio. Approximately five minutes before closing time, Michael Haley entered the store acting suspiciously. Bauer felt constrained from calling the police, however, by a recently enacted Fashion Bug policy restricting calls for police "walk throughs." According to Bauer, the policy prohibited calls to the police unless an employee felt that her life was in danger. Schacker approached Haley to offer assistance. Shortly thereafter, Haley ordered Schacker, Bauer, and three other females, including one child, into the store's back room at gunpoint. Over the next ninety minutes, Haley threatened, kicked, beat, and sexually assaulted the four women. During the course of the attack, Haley indicated that he sought revenge for the humiliation of his girlfriend by the manager of the store. Haley had apparently confused Fashion Bug with another store, however, in making these allegations. After Haley had left the store, the women went to a nearby gas station and called the police. Bauer and Schacker subsequently received workers compensation for their injuries.
On April 19, 1996, Bauer and Schacker each filed a complaint against Fashion Bug for intentional tort. The cases were consolidated on October 8, 1997. Specifically, Bauer and Schacker claimed that Fashion Bug's policy restricting the situations in which employees could call the police about suspicious persons in the store, along with the absence of security cameras, policies, or training, created a dangerous condition from which harm was substantially certain to result.
After extensive discovery, Fashion Bug filed a motion for summary judgment. According to Fashion Bug's evidence, its policy had been that employees should not call for a police "walk through" based solely on a suspicion of shoplifting. This policy had been developed as a result of complaints from black customers about whom the police had been called at another Dayton-area store. Fashion Bug also presented evidence that there had not been any prior violent crimes or any other criminal incidents apart from shoplifting at the store. Fashion Bug presented expert and lay testimony that its Beavercreek store was not in a high crime area. It also presented evidence that no other Fashion Bug stores in the region and no other stores in the Beavercreek strip mall had experienced crimes involving harm to employees prior to the Haley incident.
Bauer and Schacker filed a memorandum in opposition to the motion for summary judgment. Their evidence showed that Fashion Bug's policy had been to prohibit store employees from calling the police not just in shoplifting situations but under any circumstances unless they felt that their lives were in danger. They also presented expert testimony that the crime rate had been increasing in the area surrounding the Beavercreek store and that other characteristics of the store, such as its location in a strip mall and its all-female staff, made the store prone to crime. Bauer and Schacker's criminology expert opined that, based on the alleged Fashion Bug policy limiting calls to the police and on the location of the store, harm to an employee had been substantially certain to occur. They also relied on the testimony of Fashion Bug's criminology expert, Jane Gray, that a policy prohibiting employees from calling the police if they suspected that someone was going to rape or rob them would be "unconscionable." Bauer and Schacker contend that this was, in effect, the Fashion Bug policy because the store had not provided any training on distinguishing between a suspicious person who intends to shoplift and one who intends to rape or rob.
The trial court granted Fashion Bug's motion for summary judgment on June 24, 1998. In doing so, the trial court concluded that Bauer and Schacker had not shown the existence of a dangerous condition in the workplace or that harm was substantially certain to result from the alleged condition. On July 2, 1998, Bauer and Schacker filed a motion for relief from judgment on the grounds that Fashion Bug had not produced its written policy on calling the police to a store, as requested in discovery, until the day of the trial court's judgment. The trial court overruled this motion on July 14, 1998.
Bauer and Schacker raise three assignments of error on appeal.
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT, CHARMING SHOPPES, INC., D/B/A FASHION BUG.
Bauer and Schacker contend that they had set forth material facts demonstrating that Fashion Bug's acts or omissions rose to the level of an intentional tort such that summary judgment was inappropriate. Specifically, Bauer and Schacker claim that Fashion Bug's policy restricting store employees from calling the police created a dangerous condition in the workplace that was substantially certain to cause harm to store employees.
Summary judgment is appropriate only when the moving party has demonstrated that: 1) there is no genuine issue as to any material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harlessv. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
An intentional tort by an employer against an employee is defined very narrowly where the employee is covered under Ohio's workers' compensation laws. To establish "intent" for the purpose of proving that an employer committed an intentional tort against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, or condition within its business operation; (2) knowledge by the employer that, if the employee is subjected by his employment to the dangerous process, procedure, or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances and with such knowledge, acted to require the employee to continue to perform the dangerous task.Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus, modifying Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100, paragraph five of the syllabus. Upon motion for summary judgment by the employer, the employee must set forth specific facts which show that there is a genuine issue regarding whether the employer committed an intentional tort against him. Van Fossen, supra, at 117. To establish an intentional tort by an employer, proof beyond that required to establish negligence or recklessness is required:
 Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the results. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
Fyffe, supra, at 118.
The trial court found that Bauer and Schacker had not established either of the first two elements of the Fyffe test for an intentional tort. In other words, the trial court found that Bauer and Schacker had failed to create a genuine issue of material fact regarding the existence of a dangerous process, procedure, or condition in the Fashion Bug workplace and had failed to establish that Fashion Bug knew, to a substantial certainty, that any harm would occur even if there had been a dangerous process, procedure, or condition in place. Bauer and Schacker contest these conclusions.
Bauer and Schacker presented evidence that Fashion Bug had implemented a policy limiting the circumstances in which employees were permitted to call the police to a store. The deposition testimony conflicted about the precise nature of this policy. According to Bauer, she had been instructed that she was not allowed to call the police based on the suspicious conduct of someone in the store unless she felt that her life was in danger. According to Fashion Bug regional manager Debra Moore, the policy was that employees should not call the police to a store based solely on a suspicion of shoplifting. For purposes of summary judgment, the evidence must be construed most strongly in favor of Bauer and Schacker. Harless, supra; Civ.R. 56(C). Thus, we must accept that Fashion Bug's policy was as Bauer described it to be. Based on this testimony, we will assume for the sake of argument that Bauer and Schacker had created a genuine issue of material fact about the existence of a dangerous procedure in the workplace and that the trial court erred in concluding that they had not done so.
The trial court also concluded that Bauer and Schacker had not created a genuine issue of material fact as to whether injury was substantially certain to result from the alleged dangerous procedure. Bauer and Schacker claim that the "don't call policy" coupled with the lack of employee training on how to implement the policy, i.e., how to ascertain when a particular situation was life-threatening, and the lack of other security measures created a substantial certainty that harm to employees would result. We disagree. The evidence established that no other robberies or assaults involving store personnel had occurred at the Beavercreek Fashion Bug or at any other stores in that strip mall prior to this attack. The evidence also showed that, at most, one other robbery had occurred at other Fashion Bugs in the region. Although the crime rate in the area surrounding the Beavercreek Fashion Bug had increased in recent years commensurate with the area's development, the area was considered by experts to be low in crime and was considered by the store's employees to be safe. The history of shoplifting at the store did not create a genuine issue of material fact that violent crimes were a substantial certainty. Moreover, the employees' expert's opinion that harm was substantially certain to occur because 1) violent crimes are common in strip centers; 2) the store was operated by women; 3) the store closed a the same time every night; 4) there were no crime prevention procedures in place; and 5) employees were instructed not to call the police in some situations where persons were acting suspiciously, was not, as a matter of law, supported by the five factors upon which it was based, especially where the expert also testified that the store's policies were merely "reckless." See Burgos v. Areway, Inc. (1996), 114 Ohio App.3d 380,384.
Several cases support our conclusion. In Mitchell v. LawsonMilk Co. (1988), 40 Ohio St.3d 190, the supreme court held that an employer had not known that injury was substantially certain to occur to an employee who was shot during an armed robbery of a convenience store in a high crime area. In that case, the employee's estate relied upon the fact that she had worked alone without reasonable means of security such as alarms and cameras and without adequate instruction in handling violent situations in support of its argument that injury had been a substantial certainty. The court stated, "Even if Lawson failed to equip its stores with security devices or provide its employees with training in handling violent situations, it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result. This is so, even if we assume that the Lawson store was in a high-crime-rate area." Id. at 192-193.
Similarly, in Burns v. Lawson Co. (July 30, 1997), Summit App. No. 18101, unreported, where a Dairy Mart employee was shot and severely injured during an armed robbery of a store in a high crime area, the court was unpersuaded that the employer's knowledge of potential crime at its store satisfied the second prong of the Fyffe test. Despite evidence showing "rampant criminal activity" at the store over the years, the court upheld the trial court's finding that the employee had demonstrated no substantial certainty of harm where no injuries had resulted in eight of ten armed robberies committed in the three years preceding the incident in question. Likewise, in Richard v. Mr.Hero, Inc. (March 8, 1989), Summit App. No. 13701, unreported, the court confronted a fact scenario in which several criminal incidents, including an armed robbery, had occurred at a restaurant in a high crime area in the months preceding the kidnapping and rape of the plaintiff employee. The court concluded that the employer's knowledge and appreciation of the harm its employees potentially faced was insufficient to impute knowledge with substantial certainty that this harm would befall its employees. See, also, Bradfield v. Stop-N-Go, Inc. (Sept. 16, 1987), Montgomery App. No. 10260, unreported (Evidence of frequent robberies at particular types of stores and of additional security precautions that could have prevented an injury to an employee do not show to a substantial certainty, as opposed to a mere possibility, that an employee would be injured in a violent crime.).
Although none of these cases involved policies restricting calls to the police, they do illustrate the high degree of certainty of injury that must exist before an employer can be held liable to an employee for an intentional tort. This high standard is consistent with the jurisprudence of employer-employee intentional tort actions in general and is warranted by the intervening intentional criminal acts of third parties in these cases. Thus, while we find that Fashion Bug may have known of some risk of injury to its employees from the nature of its business, the location of its stores, and its minimal security measures and training procedures, we find that the evidence, even when construed most favorably to Bauer and Schacker, fell short of establishing that harm was a substantial certainty.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO FASHION BUG, AS THE PLAINTIFF-APPELLANTS MAY RECOVER FOR THEIR PSYCHOLOGICAL INJURIES UNDER A COMMON LAW NEGLIGENCE CLAIM AGAINST FASHION BUG.
Bauer and Schacker contend that the trial court erred in granting summary judgment in favor of Fashion Bug because they were entitled to pursue damages for their psychological injuries under a theory of common law negligence. In support of this argument, they rely on Bunger v. Lawson Co. (1998), 82 Ohio St.3d 463, in which the supreme court held that an employee who had suffered purely psychological injuries was not precluded by workers compensation statutes from pursuing a common law negligence claim. The rationale behind the Bunger decision was that, because such an employee may not recover for an injury as that term is defined in the workers' compensation statutes, R.C.4123.74's grant of immunity for injuries suffered on the job was inapplicable. At oral argument, the plaintiffs' attorney conceded that Bunger's rationale did not apply to Bauer because she had suffered physical as well as psychological injuries and had recovered for her injuries through the workers' compensation system. Thus, this argument is advanced only on behalf of Schacker.
First, we note that Schacker did not plead a cause of action sounding in common law negligence. It is well settled that a party may not advance a cause of action on appeal that was not presented in the trial court. Schaefer v. DeChant (1983),11 Ohio App.3d 281, 282-283. Second, Schacker testified in her deposition that she had been "kicked a few times" resulting in "a contusion of [her] neck and right hip" and had received workers compensation benefits. Based on this testimony, it appears that Schacker, like Bauer, did suffer injuries compensable through the workers compensation system and therefore was precluded from bringing a common law negligence action against Fashion Bug for her injuries.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF-APPELLANT'S POST-TRIAL MOTION FOR RELIEF PURSUANT TO RULE 60(B).
Bauer and Schacker contend that their motion for relief from judgment should have been granted because they were prejudiced in conducting their discovery by Fashion Bug's failure to produce its written policy on calls to the police and by its employees' denials that such a written policy existed. The written policy stated, in pertinent part, that a manager should contact local police if shoplifting was suspected.
For the purpose of summary judgment, the trial court was required to view the facts in the light most favorable to Bauer and Schacker. Thus, the trial court was required to and apparently did accept the fact that Fashion Bug had made its policy on calls to the police more restrictive in the months preceding the attack and that the employees believed that they would be punished if they did not adhere to the new policy. Because the trial court viewed the facts in this manner, we agree with its conclusion that any issue of fact about changes in the policy created by the belatedly disclosed written policy would not have affected the trial court's resolution of the motion for summary judgment. As such, the motion for relief from judgment was properly denied.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
David A. Chicarelli
Andrew C. Storar
Michael W. Sandner
Hon. Thomas M. Rose