OPINION
On August 20, 1998, Robert D. Miller and his minor daughter, Amanda Miller, filed a complaint in the Franklin County Court of Common Pleas against The Northwest Conduit Corp. ("Northwest"). Mr. Miller was an employee of Northwest and averred that he was injured while working for Northwest. Specifically, Mr. Miller averred that he was electrocuted after using a jackhammer near an energized transformer. Mr. Miller alleged Northwest's actions constituted an intentional tort.
On July 27, 1999, Northwest filed a motion for summary judgment, contending there were no genuine issues of material fact as to the elements of an intentional tort. Mr. Miller filed a memorandum contra, and Northwest filed a reply. On September 17, 1999, the trial court filed a decision granting Northwest's motion for summary judgment. The trial court concluded that Northwest had no knowledge that electricity could arc from a live transformer to a jackhammer and, therefore, Mr. Miller could not satisfy each element of an intentional tort.
Mr. Miller (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 The trial court committed reversible error by granting summary judgment in favor of Defendant-Appellee when the record reveals genuine issues of material fact on the elements of intentional tort.
Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. MentorSoccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is denovo. See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
One of the common law elements of intentional tort and the element at issue in this appeal is intent. Appellant contends there was sufficient evidence raising genuine issues of fact as to intent. In Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus, the Supreme Court of Ohio held:
 *** in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. ***
The facts in the case at bar establish the following. On August 21, 1996, appellant and a co-worker, Larry Keller, were working for Northwest (hereinafter "appellee") at a Banc One facility. Appellee was under contract to lay conduit so that overhead electrical lines could be buried. As the work progressed, it was discovered that appellee would have to dig near a transformer in order to complete the job. The padlock to the transformer box was cut in order to allow access to the transformer. The transformer sat on a cement pad. Appellant and Mr. Keller were assigned to jackhammer around two holes in order to install new conduit.
Appellant operated the jackhammer, and Mr. Keller held it to make sure it did not touch anything. Appellant and Mr. Keller completed the task and as appellant was removing the jackhammer from the hole, electricity apparently arced from the transformer to the jackhammer. Appellant and Mr. Keller were both electrocuted, causing severe burns and other injuries.
As indicated above, appellant must show that appellee had knowledge of a dangerous process, procedure, instrumentality or condition and that appellee knew that if appellant was subjected to such dangerous condition, then harm was a substantial certainty. Construing the evidence most strongly in favor of appellant, we determine there are genuine issues of material fact as to these prongs.
The "phase to phase" voltage of the transformer at issue was 13,200 volts. (Bartel deposition at 48.) The foreman on the job site was Raymond M. Stickdorn. Mr. Stickdorn testified that he knew this transformer had high voltage electricity inside of it. (Stickdorn deposition at 63.) Mr. Stickdorn stated that there was a potential for danger anytime one is working around this "stuff" and that he knew what appellant was doing was dangerous. Id. at 72, 88. Gene Rogers, appellee's vice-president, testified he was aware that high voltage equipment poses a hazard to those working near it and that when working around live electrical components, there is always a potential for electrocution or fire. (Rogers deposition at 20, 26.)
When Mr. Stickdorn found out that work had to be done inside the transformer box, he asked a Banc One employee to turn off the power. (Stickdorn deposition at 71.) Mr. Stickdorn agreed that if the transformer were shut down, it would be a lot safer, and it would eliminate the potential danger of electrocution. Id. 72. Mr. Stickdorn asked Banc One three times to turn the power off. Id. However, the Banc One facility at issue was a credit card facility and, apparently, Banc One would not turn off the power as this would cut off power to the entire building. (Hochdanner deposition at 25-27, 30-31; Stickdorn deposition at 71-72.)
Appellant and Mr. Keller testified that prior to them entering the transformer, Mr. Stickdorn told them to be careful. (May 17, 1999 Miller deposition at 29, Keller deposition at 24.) When asked what he and appellant were trying to stay away from while performing the task, Mr. Keller stated that they were trying to stay away from "everything." (Keller deposition at 24.)
Eugene W. Bartel, an electrical engineer, stated that use of a jackhammer inside a live transformer is "absolutely ludicrous" and that going into a live transformer should not be done. (Bartel deposition at 34-35.) He further testified that what appellant and Mr. Keller did violated National Electric Code standards. Id. at 36-37. Mr. Bartel stated that appellant and Mr. Keller were unqualified personnel in an energized piece of electrical equipment undertaking a task that should not have been done regardless of their qualifications. Id. at 44. Mr. Bartel testified that the safest way to have accomplished the task would have been to turn off the power. Id.
The above evidence raises a genuine issue of fact as to the existence of a dangerous process, procedure, instrumentality or condition and appellee's knowledge of such. In addition, there was sufficient evidence of appellee's knowledge that if appellant was subjected to such danger, harm was a substantial certainty. Appellee asserts it did not know electricity could arc from the transformer to the jackhammer. Appellee points to Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172, wherein the Supreme Court stated that the plaintiff has the burden of proving that the employer had actual knowledge of the exact dangers which ultimately caused injury. Indeed, Mr. Stickdorn testified that he did not know that dust thrown up by a jackhammer could conduct electricity. (Stickdorn deposition at 85.) However, the danger in the case at bar was the possibility of electrocution, and it was electrocution that caused the injuries. There was ample evidence that appellee was aware of this danger.
Therefore, appellant raised a genuine issue with regard to appellee's knowledge of the exact danger — electrocution — which caused the injuries. We also point out that Mr. Stickdorn was aware that electricity could arc from overhead lines to metal objects. Id. Hence, there was not only evidence that appellee was aware of the exact danger (electrocution) but that appellee knew electricity could arc. In addition, Mr. Stickdorn asked Banc One three times to turn off the power. This, in addition to the other evidence presented above, raises a genuine issue not only as to appellee's knowledge of a dangerous condition, but as to appellee's knowledge that harm to appellant and Mr. Keller was a substantial certainty.
As to the third prong, there was evidence that appellee, through its foreman, Mr. Stickdorn, required appellant and Mr. Keller to continue to perform the dangerous task.
Given all of the above, appellant set forth sufficient evidence raising genuine issues of fact as to all three prongs of the Fyffe test for intentional torts. Therefore, summary judgment in favor of appellee was inappropriate. Accordingly, appellant's sole assignment of error is sustained.
Having sustained appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to such court for further proceedings.
PETREE and BROWN, JJ., concur.