## FIELDS

v.

## OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

2002-Ohio-3221.]

Court of Claims of Ohio.

No. 2000–12238.

Decided April 22, 2002.

Richard Campbell, for plaintiff.

Betty D. Montgomery, Attorney General, and Eric A. Walker, Assistant Attorney General, for defendant.

———————————

FRED J. SHOEMAKER, Judge.

{¶ 1}  Plaintiff, Vicki Fields, brings this action against defendant, Ohio Department of Rehabilitation and Correction, alleging that on February 6, 1997, she was working in the course and scope of her employment as a corrections officer ("CO") at the Southern Ohio Correctional Facility ("SOCF") when she was assaulted by inmate James Harris ("Harris").  Plaintiff claims that defendant committed an intentional tort against her when Harris attacked her.  The issues of liability and damages were bifurcated, and the cause came on for trial on the sole issue of liability.

{¶ 2}  Plaintiff alleged that defendant deliberately and intentionally placed her in a dangerous location without properly instructing her in the recognition and avoidance of unsafe conditions or on the regulations applicable to her work environment.  However, plaintiff withdrew this allegation at trial.

{¶ 3}  Plaintiff proceeded to trial on her allegations that (1) defendant failed to control or eliminate the hazards of the area in which plaintiff was working and (2) failed to take action to protect her from a violent inmate whom defendant knew to be volatile and dangerous, and hostile toward and prone to attack female officers without warning or provocation.  Defendant denies these allegations.

{¶ 4}  Plaintiff was working as a relief officer on February 6, 1997, from 2:00 to 10:00 p.m. She was assigned to cell block L–1 to work with CO James R. Neal, having previously worked L–1 cell block only a few times.  L–1 was a typical cell block housing eighty inmates in single cells, which included a lower and upper floor with twenty cells on each floor.  CO Neal was working the control booth.

{¶ 5}  At approximately 8:30 p.m., plaintiff gave a direct order to Harris to remove a towel from the bars of his cell.  He refused.  Plaintiff called Lt. Rogers, who came and talked to Harris.  Harris subsequently gave his towel to plaintiff.  She then wrote a conduct report on Harris.

{¶ 6}  All inmates are required to be in their cells for a lock-up count at 9:00 p.m. Prior to plaintiff's beginning the count, she was in the control room with CO Neal.

{¶ 7}  The inmates were finishing up showers, and Harris was the last inmate in the shower.  CO Neal opened the shower door so that Harris could go to this cell for the lock-up count.  Harris came out of the shower on the top range and

started down the stairs. CO Neal ordered Harris to lock up but Harris refused. Instead, he came to the hatch at the control booth and requested kites. He was given the kites and again ordered by CO Neal to report for lock up. Harris headed in the direction of the stairs for lock up but then headed toward plaintiff, who had just entered the range to begin the count. Harris viciously assaulted plaintiff by striking her with his fist, kicking her, and pulling her by the hair. He then struck her with her own baton across the head and rib area. Harris then paraded around the range in a small circle holding the PR–24 baton over his head before walking up the back stairs to the top tier. Harris waited in this position knowing that other COs would be coming to subdue him.

{¶ 8} When CO Neal saw Harris approaching plaintiff, he tried to warn her but was unsuccessful. He then called Control Center I, stating that an officer was down in cell block 1. There was perhaps a four-to-five-minute delay in opening the gates to cell block LC–1 to permit COs to come to the aid of plaintiff after the assault started. The delay was caused by CO Connie Ward's failure to promptly open the gates to the L–1 cell block. She had just relieved CO Sheila Albrecht in Control Center 5. Ward hit the "override" to open the gates so that other officers could enter LC–1. However, she failed to hold the "override" down until the cell doors fully opened. Finally, another CO was able to open the cell gates. Prior to the opening of the L–1 cell block gates, plaintiff had struggled from the assault scene back to the area of the cell gates. CO Albrecht met plaintiff at the cell gate, and after the LC–1 gate opened she continued to aid plaintiff. CO Albrecht testified that it took about three to three and one-half minutes to get the gate open. The court finds that testimony to be credible.

{¶ 9} The court further finds that defendant was negligent in not promptly opening the cell gates after CO Neal notified the control center that a CO was down in LC–1 block. However, the court finds that even if the LC–1 gate had been promptly opened, it was probable that no CO could have reached plaintiff until after the assault was over. In the court's best judgment, based on the totality of the evidence, the physical assault may have lasted from a minimum of thirty to a maximum of ninety seconds.

{¶ 10} Plaintiff testified that before leaving the control room to perform the 9:00 p.m. count, she told CO Neal to keep Harris locked up in the shower until she completed the count. CO Neal testified that no such conversation ever took place. The court finds that CO Neal's testimony was accurate. Plaintiff knew that all inmates were to be in their cells prior to the lock-up count. Undoubtedly, plaintiff was not aware that Harris was in the process of being released from the shower when she left the control room to do her count. Plaintiff knew that she had just given Harris a conduct report and that he was very upset. The court does not believe that plaintiff would intentionally put

herself in such a dangerous situation if she did not believe that Harris was locked in his cell. Unfortunately, plaintiff and defendant were both negligent. However, defendant's negligence was not a proximate cause of plaintiff's injuries because Harris's vicious attack on plaintiff could not have been avoided even if the cell gates had been promptly opened.

{¶ 11} In *Johnson v. BP Chem., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, the court held that R.C. 2745.01, which governed employers' liability for intentional torts, is unconstitutional in its entirety. Therefore, the court will apply the common law to determine whether plaintiff has proven by a preponderance of the evidence that defendant committed an intentional tort proximately causing injuries to plaintiff.

{¶ 12} One of the common-law elements of an intentional tort is "intent," which has been defined in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus:

{¶ 13} "[I]n order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." (Citations omitted.) See, also, *Arrigo–Klacik v. Germania Singing & Sports Soc.* (2001), Franklin App. No. 00AP–1397, 2001 WL 987811.

{¶ 14} Prisons are dangerous places in which to work. Plaintiff should have checked with CO Neal to make certain that all inmates were locked up before she started the count. Under the circumstances previously noted, plaintiff placed herself in a dangerous situation.

{¶ 15} Plaintiff has failed to prove by a preponderance of the evidence any of the three necessary common-law elements of intent as defined by *Fyffe*, supra.

{¶ 16} Judgment will be rendered for defendant.

Judgment for defendant.

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.