OPINION
{¶ 1} Plaintiff-appellant Diane Hinton, acting personally and as Administratrix of the Estate of Charles P. Hinton, Jr., appeals from the September 9, 2005, Judgment Entry of the Stark County Court of Common Pleas which granted summary judgment in favor of the YMCA of Central Stark County [hereinafter YMCA].
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 20, 2005, appellant, acting personally and as Administratrix of the Estate of Charles P. Hinton, Jr., filed a complaint in the Stark County Court of Common Pleas against the YMCA, John Doe, as the administrator of the Estate of Jeffrey D. Marshall and Charles M. Huston, Esq., Administrator [application pending] of the Estate of Jeffrey D. Marshall. Subsequently, Attorney Huston entered an appearance as counsel for the Estate of Jeffrey D. Marshall.
 {¶ 3} In the complaint, appellant alleged that the YMCA had committed an intentional tort which led to the death of Charles P. Hinton, Jr. That claim was based upon the following assertions. Mr. Hinton was an employee of the YMCA. The YMCA was a single room occupancy facility. Jeffrey B. Marshall was one of the residents at the YMCA. However, Marshall broke several of the YMCA's residential rules. On January 22, 2004, Michelle Poorman, the resident director at the YMCA, and two men from the maintenance staff, Mr. Hinton and Lamar Knox, went to Marshall's floor. Ms. Poorman's intention was to tell Marshall that he would have to move out of the facility. After speaking with Marshall, the three of them left the floor. However, subsequently, the three of them proceeded back to Marshall's floor to check on another room that needed attention. As the three were leaving that room, Mr. Hinton was the first one to walk out of the room. At that same time, Marshall came out of the bathroom, pulled a gun and shot Mr. Hinton. After Marshall shot Mr. Hinton, Marshall shot and killed himself.
 {¶ 4} On July 11, 2005, the YMCA filed a motion for summary judgment. On September 9, 2005, the trial court granted the YMCA's motion for summary judgment. Subsequently, on October 4, 2005, the trial court issued a Nunc Pro Tunc Judgment in which it added language stating that the order was final and appealable and that there was no just reason for delay.
 {¶ 5} It is from the grant of summary judgment that appellant appeals, raising the following assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 7} In the sole assignment of error, appellant contends that the trial court erred when it granted summary judgment in favor of appellee. We disagree.
 {¶ 8} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides the following, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 9} Thus, an intentional tort issue survives summary judgment only if there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential issue of the case. Taulbee v. Adience, Inc.,BMI Div. (1997) 120 Ohio App.3d 11, 16, 696 N.E.2d 625 (citingSanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172,539 N.E.2d 1114. It is pursuant to this standard that we review appellant's assignment of error.
 {¶ 10} In order to maintain an action for intentional tort committed by an employer against an employee, the following must be demonstrated: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 115,570 N.E.2d 1108.
 {¶ 11} Appellant argues that there is a question of fact as to 1) whether the YMCA knew of the existence of a dangerous process or procedure, i.e. knowledge that the manner in which occupants were asked to leave the YMCA facility was a dangerous procedure, 2) whether the YMCA knew there was a substantial certainty that this process or procedure would result in harm to Mr. Hinton and 3) whether the YMCA required Mr. Hinton to continue to perform the dangerous task. In this case, we find that even if appellant could meet the first prong of the Fyffe
test, consideration of the second prong of the Fyffe test is fatal to appellant's claim. The second prong of the Fyffe test requires that the plaintiff prove that the employer knew that harm was substantially certain to occur as a result of a dangerous condition. In other words, even if this court were to assume arguendo that a question of fact existed as to whether the YMCA knew of the existence of a dangerous process or procedure, i.e. knowledge that the manner in which occupants were asked to leave was a dangerous procedure, appellant has made no showing that the YMCA knew there was a substantial certainty that this process or procedure would result in harm to the employee.
 {¶ 12} It is not enough that the employer should have known or even that the employer was reckless. The Ohio Supreme Court expounded upon the intent standard in Fyffe at paragraph two of the syllabus:
 {¶ 13} "[P]roof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent."
 {¶ 14} In this case, appellant essentially contends that 1) the YMCA knew of the risks inherent with working with residents who were criminals, mentally ill, drug addicts and alcoholics; 2) evictions are inherently dangerous; 3) that Mr. Hinton frequently accompanied the resident director on evictions; and 4) the YMCA provided no training to the employees in handling conflicts with the residents. However, there was no indication that Marshall was violent or that he had a firearm. The employee and the resident director went to ask Marshall to leave because he had violated the rules. However, those rule violations were not of a violent or dangerous nature. In short, there has been no showing that the YMCA knew that harm to Mr. Hinton was a substantial certainty.
 {¶ 15} Several cases support our conclusion. In Mitchell v.Lawson Milk Co. (1988), 40 Ohio St.3d 190, 532 N.E.2d 753, the Supreme Court held that an employer had not known that injury was substantially certain to occur to an employee who was shot during an armed robbery of a convenience store in a high crime area. In that case, the employee's estate relied upon the fact that she had worked alone without reasonable means of security such as alarms and cameras and without adequate instruction in handling violent situations in support of its argument that injury had been a substantial certainty. The court stated, "Even if Lawson failed to equip its stores with security devices or provide its employees with training in handling violent situations, it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result. This is so, even if we assume that the Lawson store was in a high-crime-rate area."Id. at 192-193, 532 N.E.2d 753.
 {¶ 16} Similarly, in Burns v. Lawson Co. (1997),122 Ohio App. 3d 105, 701 N.E.2d 386, where a Dairy Mart employee was shot and severely injured during an armed robbery of a store in a high crime area, the court was unpersuaded that the employer's knowledge of potential crime at its store satisfied the second prong of the Fyffe test. Despite evidence showing "rampant criminal activity" at the store over the years, the court upheld the trial court's finding that the employee had demonstrated no substantial certainty of harm where no injuries had resulted in eight of ten armed robberies committed in the three years preceding the incident in question. See also, Richard v. Mr.Hero, Inc. (March 8, 1989), Summit App. No. 13701, 1989 WL 21245; Bradfield v. Stop-N-Go, Inc. (Sept. 16, 1987), Montgomery App. No. 10260, 1987 WL 17103.
 {¶ 17} These cases illustrate the high degree of certainty of injury that must exist before an employer can be held liable to an employee for an intentional tort. We find that the evidence, even when construed most favorably to appellant, fell short of establishing that harm was a substantial certainty.
 {¶ 18} Accordingly, summary judgment was appropriate. Appellant's sole assignment of error is overruled.
 {¶ 19} The judgment of the Stark County Court of Common Pleas is affirmed.
By: Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.