CARTER, Appellant,

v.

LAPP ROOFING AND SHEET METAL CO., INC., et al., Appellees.

[Cite as *Carter v. Lapp Roofing & Sheet Metal Co., Inc.*, 169 Ohio App.3d 255, 2006-Ohio-5391.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21571.

Decided Oct. 13, 2006.

Jeffrey R. McQuiston and David G. Roach, for appellant.

Robert J. Hojnoski, for appellees.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Kevin S. Carter, appeals from a summary judgment rendered against him on his intentional-tort claim against his employer, defendant-appellee Lapp Roofing and Sheet Metal Co., Inc. ("Lapp"). He contends that the trial court erred in rendering judgment against him, because he presented evidence demonstrating the existence of genuine issues of material fact for a jury to determine.

{¶ 2} We agree with Carter that the evidence he presented establishes the existence of genuine issues of material fact. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

I

{¶ 3} On September 11, 2002, Carter was employed by Lapp as a foreman on a roofing repair job. On that date, Carter and two other employees were working

on a roof, at heights of approximately 40 to 50 feet. At the end of the work day, the men were cleaning the work site when Carter tossed a co-worker's shirt, along with another shirt and a jacket, off the roof, toward the parking lot below. The co-worker's shirt became entangled in some wires, which were eight to ten feet away from the edge of the roof. Carter attempted to retrieve the entangled shirt by using a piece of wood and a metal roller, but was unsuccessful. The roller frame also became stuck on the line. Carter then attempted to retrieve the shirt by using a turn bar, which is a type of metal pole used in the roofing industry. The turn bar was approximately ten feet long. While using the turn bar, Carter received an electrical shock. As a result of the shock, Carter fell to the parking lot below, sustaining injuries.

{¶ 4} Carter filed this intentional-tort action against Lapp. Lapp moved for summary judgment on Carter's claims for relief. The trial court granted the motion, finding that reasonable minds could not conclude that Carter had demonstrated the existence of an intentional tort.

{¶ 5} From the summary judgment rendered against him, Carter appeals.

## II

{¶ 6} Carter's sole assignment of error is as follows:

{¶ 7} "The trial court erred when it granted defendant Lapp Roofing & Sheet Metal Co., Inc.'s motion for summary judgment when plaintiff produced evidence on each of the three intentional tort elements articulated in *Fyffe v. Jeno's*."

{¶ 8} Carter contends that the trial court improperly granted summary judgment in favor of Lapp. Specifically, he argues that Lapp failed to establish that no genuine issue of material fact existed for trial as to the three elements of an employer intentional tort set forth in *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108.

{¶ 9} We review the appropriateness of summary judgment de novo and follow the standards as set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 10} To establish "intent" for the purpose of proving that an intentional tort has been committed by an employer, an employee must demonstrate "(1) knowledge by the employer of the existence of a dangerous process, procedure,

instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 11} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be [characterized as] negligen[t]. As the probability increases that particular consequences may follow, * * * the employer's conduct may be characterized as [reckless]. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." Id., paragraph two of the syllabus.

{¶ 12} In this case, Carter, through deposition testimony, presented the following evidence. On the day of the accident, Carter and his co-workers were working at a height of 40 to 50 feet, without safety harnesses. Carter testified that he had informed his supervisor, Gary Ronald Bryant, that safety harnesses were needed. He further testified that his request for harnesses was denied by Bryant. Carter stated that Bryant had told him that "there wasn't enough money in the job for me to use harnesses, because whenever we use harnesses, it takes the job longer to do, and I only had four days to do the job. If it took me longer than four days to do the job, he didn't have the money in it." Carter testified that another supervisor knew that harnesses were needed on this site, but did not grant the harness request.

{¶ 13} Carter admitted that Lapp had a general policy that items were not to be thrown off the roof at a job site. However, he testified that this meant that "large objects" were not to be thrown off a roof. He further testified that he had seen his supervisor throw shirts off roofs at job sites. Carter testified that on the day in question, he was cleaning up the job site when he tossed the shirts and jacket off the roof. He testified that he did this so that the men would not have to carry the items down from the roof. According to Carter, he had seen other workers throw items off roofing jobs and that he had seen such items get stuck in a tree. Carter testified that it was his "duty" to remove the shirt because he was required by the employment handbook to keep the job site clean. He testified that failing to get the shirt would "make the job look bad."

{¶ 14} One of Carter's supervisors, Gary Bryant, also testified by deposition. Bryant testified that Carter had brought up the need for safety harnesses on this particular job prior to the accident. Bryant acknowledged that safety harnesses would be needed on this particular job. According to Bryant, there were numerous times when he had told Duane Lapp, the owner of Lapp Roofing, that safety harnesses needed to be used on different jobs, but that they were not used. Bryant testified that Duane Lapp did not like to use harnesses "because it cut down on how much [work] they could do per day, because it kind of tethered them to a certain spot." He also testified that Duane Lapp did not provide any sort of safety training to his employees.

{¶ 15} Bryant testified that while workers were not supposed to throw items down from roof tops, he assumed that it happened. He further stated that if such an item were to get stuck in a tree, a wire, or on a ledge that a worker would, "within reason," be expected to clear it from the job site.

{¶ 16} The affidavit of Jose Chappa, a former foreman for Lapp, was also presented to the trial court. In his affidavit, Chappa averred that workers were "always told by management to leave the job site clean of all trash or debris." He further averred that as a foreman, he would "instruct [his crew to clean] anything that would blow off the roof or be thrown off the roof and land on the ground, get caught in a tree, an overhang, or on anything else." Finally, Chappa averred that he and another Lapp employee had been injured in falls from roofs while working for Lapp.

{¶ 17} Duane Lapp also provided deposition testimony. He testified that Bryant, as a supervisor over Carter, would be expected to analyze all job-safety concerns and to make recommendations for safety protection. He further testified that on a job like this one, he would expect Bryant to require the use of safety belts. Finally, Lapp admitted that his company had other workers who had fallen from various job sites and been injured.

{¶ 18} We now analyze this evidence with regard to whether it satisfies the conditions set forth in *Fyffe*. We begin with the first prong—whether Lapp was aware of a dangerous condition. In support of its motion for summary judgment, Lapp argued that the dangerous condition in this case was Carter's attempt to retrieve the shirt from the wires. Lapp argued, and the trial court agreed, that it could not have been aware of the dangerous condition, because it was not aware that Carter would attempt to retrieve the shirt from the wires or that he would be shocked by an electrical current and subsequently fall.

{¶ 19} We disagree. The relevant issues in this case involve the questions of whether Lapp knew that its men were working at a height of 40 or more feet; whether Lapp knew that for the men to be safe on the job they needed to use

safety harnesses; and whether Lapp knew that the men were not protected by harnesses. As demonstrated by the record, there was evidence that Carter's supervisors were aware that safety harnesses should have been used for the roof-repair job and that despite Carter's request, harnesses were not provided. Given this evidence, a reasonable juror could find that there was a dangerous condition in that the workers were unrestrained on a roofing job that called for harnesses. A reasonable juror could further find that Lapp was therefore aware that the workers were in danger due to the risk of falling from the roof.

{¶ 20} We next turn to the second *Fyffe* prong—knowledge that an injury is substantially certain to occur. We acknowledge that Lapp might not have anticipated the exact circumstances surrounding Carter's fall. However, we conclude that a juror could find that Lapp had knowledge that the type of action taken by Carter, i.e., trying to retrieve an object from an adjacent tree or wire, did occur on its job sites from time to time and was therefore not a freakish occurrence that Lapp could not reasonably have foreseen. Lapp was aware that on this job, its workers were at the edge of the roof approximately 40 feet off the ground, without safety harnesses. Lapp knew that its workers needed safety harnesses to be safe and that they did not have them. We conclude that a juror could reasonably find that Lapp was aware that its workers performed the type of actions taken by Carter and that without the benefit of safety harnesses, its workers were substantially certain to fall, if not as the result of this particular chain of events, then as the result of some equally, reasonably foreseeable chain of events. A reasonable juror might find, on this evidence, viewed in a light most favorable to Carter, that Lapp's insistence that its workers work on job sites 40 to 50 feet above ground, without safety harnesses, meant that a fall was substantially certain to occur and that injury was the certain result.

{¶ 21} Finally, we address the third *Fyffe* prong—that the employer, under these circumstances, and with the knowledge that Lapp could be found to have possessed, did act to require the employee to continue to perform the dangerous task. A juror could find that Lapp was aware of previous instances in which items had become entangled in wires or trees after having been thrown by workers or blown by the wind. A juror could also find that Carter's actions were within the purview of his job, given that Lapp required its workers to clean up all job sites, and that cleanup included retrieving any items entangled in the wiring. Thus, we conclude that a juror could reasonably find the evidence sufficient to meet the last *Fyffe* requirement.

{¶ 22} Carter's sole assignment of error is sustained.

## III

{¶ 23} Carter's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

Judgment reversed and
cause remanded.

BROGAN and WALTERS, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.