DECISION AND JUDGMENT ENTRY
This matter is before the court following the February 21, 2001 judgment entry of the Lucas County Court of Common Pleas granting summary judgment in favor of appellees Sun MidAmerica Marketing 
Refining Co. ("Sun") and C W Tank Cleaning Company ("C W").
The following undisputed facts are relevant to this appeal. On October 22, 1997, the date of the accident that is the subject of this case, appellant, Arthur M. Young, was employed at Sun as a maintenance carpenter. His immediate supervisor was Leo Windle, maintenance supervisor.
On the morning of the accident, Young was assigned to work at the west dissolved nitrogen flotation ("DNF") pit. The pit is approximately sixteen feet deep and eighty feet wide and had been previously drained and cleaned by appellant C W. Joe Turek, a Sun boilermaker, remained outside the pit as a safety observer.
Young's task that day was to hang four plumb bobs, as reference points, in order to realign the shafts and sprockets within the DNF pit. Young had questions regarding where to hang the plumb bobs and Windle came to assist. After a discussion regarding the assignment, Young began to hang the first plumb bob at the northeast corner of the DNF pit. He threw the bob over the shaft and then lowered it down with the attached string. The strings were then tied together and Young marked a spot on the floor of the pit using a soap stone.
After hanging the first plumb bob, Young determined that he needed to measure how far the string was from the center of the sprocket. He needed a ladder to complete the task. He and Windle retrieved one from the southeast corner of the pit. Windle held the ladder while Young took the measurement. The same procedure was used at the west side of the DNF pit.
Upon completion of the second bob, Young learned that Windle was having trouble threading the string through the remaining two bobs and was taking them to the machine shop to have them drilled out. Young then went on break.
After break and while waiting for Windle to return, Young noticed that the second plumb bob had slipped out of position. Young began climbing the ladder; the ladder slipped and Young fell and injured his leg. The ladder likely slipped because it was the top half of an extension ladder and did not have safety feet.
On October 21, 1999, Young commenced the instant action against Sun and C W. As to Sun, Young claimed employer intentional tort, arguing that Sun intentionally caused his injury by instructing him to use defective equipment substantially certain to cause injury. Young's claim against C W was for negligently leaving unsafe equipment at Sun. Young's wife, Patricia L. Young, made a claim against both for loss of consortium.
Both Sun and C W filed motions by summary judgment which Young opposed. A hearing was held on the motions on February 15, 2001, and the trial court granted both motions. A judgment entry on the motions was filed February 21, 2001. Young then timely filed the instant appeal.
On appeal, Young raises the following assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 "The trial court erred to Appellant Arthur M. Young's prejudice by granting summary judgment to Appellee C W Tank Cleaning Company, Inc., when a genuine issue of material fact existed as to Appellee C W Tank Cleaning Company, Inc.'s ownership of the defective ladder which caused appellant's fall.
 "ASSIGNMENT OF ERROR NO. 2
 "The trial court erred to Appellant Arthur M. Young's prejudice by granting summary judgment to Appellee Sunoco MidAmerica Marketing and Refining Company when genuine issues of material fact existed as to each element constituting this employer's intentional conduct against appellant."
At the outset we note that an appellate court reviews a trial court's ruling on a summary judgment motion de novo. Conley-Slowinski v.Superior Spinning Stamping Co. (1998), 128 Ohio App.3d 360, 363. To succeed on a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that:
 "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679.
A party claiming to be entitled to summary judgment on the grounds that a nonmovant cannot prove his or her case bears the initial burden of specifically identifying the basis of its motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact as to an essential element of the nonmovant's case.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant satisfies this burden by presenting competent summary judgment evidence, of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once the movant satisfies this initial burden, the burden shifts to the nonmovant to produce specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue exists for trial. Id. Accord Vahila v.Hall (1997), 77 Ohio St.3d 421, 429-430; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 114-115.
In Young's first assignment of error, he contends that the trial court erroneously granted summary judgment in C W's favor because a genuine issue of material fact exists regarding the ownership of the ladder. C 
W conversely argues that because no one can identify the owner of the ladder, either directly or through reasonable inference, summary judgment was properly granted.
Frederick L. Johnson, special investigator for the Bureau of Workers' Compensation ("BWC"), was charged with investigating Young's accident. On January 7, 2000, Johnson interviewed James C. Parker, vice president of C W. The substance of the interview is set forth in Johnson's investigation report and states, in part:
 "Mr. Parker stated, that to his knowledge, one of C W Tank Cleaning's Ladders was involved in Mr. Young's (claimant) accident. However, Mr. Parker said that one of the identical ladders had been disposed of since the accident. He indicated that he had one extension ladder that was either the ladder involved or one that was similar. The investigator did photograph the remaining ladder. * * *. Mr. Parker also provided the invoice regarding the purchase of the ladder(s). * * *"
On November 14, 2000, Johnson signed an affidavit which stated that during his interview with Parker: "Mr. Parker told me that the ladder involved in Mr. Young's accident belonged to C W Tank Cleaning Company."
Johnson was deposed on January 15, 2001, and questioned about his interview with Parker and resulting November 14 affidavit. Johnson stated:
 "Q: Now you say in this affidavit in the second sentence `During our conversation, Mr. Parker told me that the ladder involved in Mr. Young's accident belonged to the C W Tank Cleaning Company.'
 "A: Well, that's what this states, but as far as I recall, in both our conversations, Mr. Parker indicated to his knowledge C W had a ladder, extension Werner ladder over at Sun Oil. * * * I can't say that he told me that that was the actual ladder involved, just that C 
W had an extension ladder over at Sun Oil.
 "Q: So tell me if I'm wrong, Mr. Parker told you, when you asked him, that C W did have a ladder over at the Sun Refinery, correct?
"A: At the time of —
"Q: At the time of Mr. Young's accident?
"A: — at the time of Mr. Young's accident.
 "Q: But Mr. Parker did not tell you that the ladder that Mr. Young fell from was owned by C W, correct?
"A: That's correct."
Later in his deposition, when questioned regarding the apparent discrepancies in his deposition testimony and prior affidavit, Johnson testified:
 "Q: You've used the word involved in Paragraph 3 of you [sic] report and it also appears in Paragraph 4 of the affidavit. In what context were you using the word involved?
 "A: To me involved is the actual ladder that Mr. Young fell from but I'm not saying anyone told me that as far as Mr. Young fell from a C W ladder.
"Q: Then why did you use the word?
"A: Why do I use it?
"Q: Yes.
 "A: Because it was a synopsis of Mr. Parker's and mine conversation. I'm not saying he actually used the word though. I can't testify to that.
 "Q: So let me see if I understand this. You did a synopsis based on a conversation that you had with Mr. Parker?
"A: Right, two conversations.
 "Q: He did not specifically tell you that a C W ladder was involved in the accident, correct?
"A: I'm not saying that.
MR CLARK: Objection.
 "A: I'm not saying he said that. He very well may have said that. All I'm saying is he didn't say Mr. Young fell from a ladder belonging to C W.
"Q: But based upon your conversation with him —
"A: Uh-huh.
"Q: — two of them —
 "A: Based on two conversations, one by telephone and one in person, it was my impression that the ladder Mr. Young fell from was C W's, but I'm not testifying to the fact that Mr. Parker flat out told me it was."
Johnson further testified:
 "Q: Mr. Johnson, do you stand by the statement in Paragraph 3, Page 7, number — sentence number I believe it's 3? Would you read it out loud first?
"A: Three?
"Q: Yes.
 "A: `Mr. Parker stated, that to his knowledge, one of C W Tanks Cleaning ladder was involved in Mr. Young's claimant accident.'
 "Q: And even though if Mr. Parker did not use those exact words, is that your — to the best of your ability, your conclusion that you, strike that. Is that the best synopsis you can come up with as to what he said after your phone conversation and personal meeting with him?
"A: Yes."
In both Parker's affidavit and deposition, he denied that the ladder Young fell from was owned by C W. Parker explained that he merely stated to Johnson that C W had a ladder on site at Sun.
In its answer brief, C W argues that the testimony presented by Johnson in his affidavit and deposition was not contradictory, rather the latter was merely a clarification and supplementation of the former. We disagree. Johnson's BWC report and affidavit state that Parker indicated that a C W ladder was involved in Young's accident. Johnson clearly contradicts this statement, or rather the meaning of the statement, during his deposition. Parker also denies making the statement.
Based on the foregoing, and construing the evidence in a light most favorable to Young, we find that a genuine issue of material fact exists as to whether C W owned the ladder at issue in this case.
As stated previously, our review of the trial court's ruling on a summary judgment is de novo. Conley-Slowinski,
supra. However, though not raised as an assignment of error, we must note that at the hearing on the motion, and in C W's answer brief, arguments were made relative to C W's duty of care assuming it owned the ladder. Such arguments were not raised in C W's summary judgment motion and should not have been entertained at the hearing. A movant is required to specifically delineate its basis on which summary judgment is sought to allow the non-movant a meaningful opportunity to respond.Mitseff v. Wheeler, 38 Ohio St.3d at 113.
Accordingly, the only issue properly before the trial court was the disputed ownership of the ladder. Because we have found a genuine issue exists as to such ownership, we find that appellant's first assignment of error is well-taken.
Young's second assignment of error disputes the trial court's award of summary judgment in favor of Sun. Young argues that the trial court failed to acknowledge questions of material fact as to each of the elements necessary to establish Sun's intentional tort, and improperly weighed the evidence and judged the credibility of the evidence.
In an action against an employer for intentional tort, a plaintiff must show:
 "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." (Citation omitted.) Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
In setting forth the proof required to establish intent, the Fyffe
court held that "mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. at paragraph two of the syllabus. Rather, it must be shown that the probability of certain consequences is such that the "employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds * * *." Id.
In the present case, Young's supervisor, Leo Windle, testified by deposition and affidavit that he was not aware that the ladder was the top half of an extension ladder without safety feet until after the accident. Windle testified that had he known of the defective condition of the ladder, according to Sun policy it would have been thrown away.
Windle testified that the ladder was not tied off, as is Sun's policy, because he did not see a good location to attach the ladder. Nicholas Athanitis, Sun's former health and safety specialist, testified that for a job requiring repeated movement of the ladder safety feet combined with a person holding the ladder would be sufficient. Windle similarly testified that he perceived no danger to Young so long as he held the ladder. Windle believed that when he was out of the DNF pit repairing the plumb bobs, Young would have taken a break.
Upon review of the depositions, affidavits, and other proper Civ.R. 56(C) evidence, we cannot say that the trial court erred in granting summary judgment in favor of Sun. While it's possible that Windle should have known that the ladder was defective, the evidence does not support an intentional tort theory. Appellant's second assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was not done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed, in part, and affirmed, in part. Court costs of this appeal shall be equally assessed to appellant and appellee C W Tank Cleaning Company.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., JUDGES CONCUR.