OPINION
{¶ 1} On January 7, 2002, appellant, Rickey Jones, together with his wife, Gwen Jones, filed a complaint against appellee, J L Specialty Steel, Inc., for intentional tort regarding injuries appellant received from an employment accident on August 21, 2000. At the time of the accident, appellant was a second helper on a 50" Slitter involving steel coils. The second helper was responsible to "cardboard" the coil if needed. In order to cardboard the coil, appellant clipped the jog reverse control button of the unwinder to keep the coil rotating. The hold down roll or "banana" was in the down position on top of the coil. He then positioned himself in front of the rotating coil and placed tape and cardboard on the coil. His glove on his right hand became caught on the coil and was pulled to a "pinch point" formed between the banana and the coil. As a result, appellant's hand was crushed in the pinch point.
 {¶ 2} On March 31, 2003, appellee filed a motion for summary judgment. By judgment entry filed June 6, 2003, the trial court granted said motion.
 {¶ 3} Appellants filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "The Trial Court committed prejudicial error and abused its discretion when it granted defendant-appellee J L Specialty Steel, Inc.'s motion for summary judgment on Plaintiffs-Appellants' claim for employer intentional tort since genuine issues of material fact remain."
 I {¶ 5} Appellants claims the trial court erred in granting summary judgment to appellee. We disagree.
 {¶ 6} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins,75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 7} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex.rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 8} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35.
 {¶ 9} Appellants claim the trial court erred in granting summary judgment to appellee when there existed three genuine issues of material fact:
 {¶ 10} 1. Appellee was aware of the existence of a dangerous process and/or procedure in its operation.
 {¶ 11} 2. Appellee knew if employees were subjected to this dangerous process and/or procedure, harm to the employee would be a substantial certainty.
 {¶ 12} 3. Despite this knowledge, appellee required employees to continue to perform the dangerous process and/or procedure.
 {¶ 13} Appellants claim the dangerous process and/or procedure was the use of a "clip" to tie down the jog reverse control button of the unwinder in order to cause the steel coil to rotate continuously while an employee taped and cardboarded the coil.
 {¶ 14} Pursuant to the standard of review in Civ.R. 56, we must construe all the evidence in a light most favorable to appellants. The following facts are basically undisputed:
 {¶ 15} 1. The use of the clip to cause the continuous rotating of the steel coil was how the task of cardboarding the coil was accomplished by the second helper. Jones depo. at 150-153, 158; Barth depo. at 38-41; Williams depo. at 37-38, 49-50, 53; Hughson depo. at 23-25, 40-41, 43-45; Avdul depo. at 26-27, 29-33; Leary depo. at 25-32; Horn depo. at 93-97.
 {¶ 16} 2. The use of the clip was basically unknown to safety personnel. Leary depo. at 42-45; Bland depo. at 81-83, 119-120.
 {¶ 17} 3. Safety and maintenance supervisors considered the use of the clip to be dangerous, and a violation of the no-tamper rule for safety devices. Also, the clip could damage the machinery. Bland depo. at 82-83; Nelson depo. at 15, 30-32, 41.
 {¶ 18} 4. The continuous rotating of the steel coil while cardboarding did not create a pinch point. The position of the hold down roll or banana in the down position created the pinch point. Jones depo. at 170-171; Horn depo. at 141-142, 263-264; Hughson depo. at 79-80, 99-100; Barth depo. at 104-105.
 {¶ 19} 5. The use of the clip for continuous rotation enabled the job performed by the second helper to be done unassisted so that co-workers could complete or begin other tasks. Jones depo. at 125-126, 159-160; Barth depo. at 30-32; Williams depo. at 54-59; Horn depo. at 234-235, 263-265; Shaffer depo. at 51-54.
 {¶ 20} The following facts are construed in a light most favorable to appellants:
 {¶ 21} 1. Management acquiesced to the use of the clips as they had been standard practice since the 1970's; immediate supervisors knew of it and co-workers trained using it. Leary depo. at 51-53; Horn depo. at 97; Shaffer depo. at 26-27; Williams depo. at 49-50.
 {¶ 22} 2. The use of the clip was an override of the machine's safety device. Bland depo. at 82-83.
 {¶ 23} 3. Training on the machine was that the banana could be either up or down, although the preferred method was up. Jones depo. at 90; Horn depo. at 90-91; Leary depo. at 54-55; Barth depo. at 104; Hughson depo. at 18-21, 28; Williams depo. at 21-22, 28, 38-39; Shaffer depo. at 77-78.
 {¶ 24} The standard to maintain an action for an intentional tort is as follows:
 {¶ 25} "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. [1988],36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)" Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 26} As Justice Holmes pointed out in Van Fossen, supra, at 117, in the area of "intentional tort," the intent of the employer may be "circumstantially inferred." Also, as noted inFyffe at paragraph two of the syllabus, there are layers of actions which at times do not reach to the level of intentional acts:
 {¶ 27} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent."
 {¶ 28} The most troubling aspect of the case sub judice is that the dangerous process and/or procedure is argued to be the use of the clip on the jog reverse control button of the machine. However, as appellant himself admitted, it was not the cause of his injury. As he stated in his deposition, his glove was caught under the banana in the down position, pulling his hand into the pinch point causing the injury. Jones depo. at 162-166. Once the banana was raised, appellant's hand was free. Id. at 165-166.
 {¶ 29} The machine could not be turned off because no one was manning it to turn it off, and appellant was some three feet away with his back to the button. Jones depo. at 161-162.
 {¶ 30} Although appellants make a cogent argument that appellee acquiesced to the continuous rotating of the steel coil, they fail to establish that the creation of the pinch point during the process of cardboarding the steel coil was known to create a harm with substantial certainty, and that appellee permitted such known dangerous harm to continue to exist. We find appellants fail in their defense of the summary judgment motion as to prongs two and three of the Fyffe test. They may very well have proven negligence or knowledge on the part of appellee, but not that harm was substantially certain to exist. We find this because, despite the parameters of Civ.R. 56, it is clear the clip on the jog reverse control button was not the proximate cause of the injury, and the "banana up" or "banana down" process was not known as a dangerous process and/or procedure that would substantially cause harm to an employee.
 {¶ 31} The sole assignment of error is denied.
 {¶ 32} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Farmer, P.J., Wise, J., and Edwards, J., concur.