**MILLER et al., Admrs., Appellants,**

**v.**

**TRAFZER, d.b.a. Trafzer Excavating, et al., Appellees.**

[Cite as *Miller v. Trafzer,* 150 Ohio App.3d 695, 2002-Ohio-6800.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–02–45.

Decided Dec. 12, 2002.

696

S. Fredrick Zeigler, for appellant Kimberly B. Miller.

C. Michael Piacentino, for appellant Wiley Collins.

William Benson, for appellees.

---

SHAW, Presiding Judge.

{¶ 1} The plaintiff-appellants, Kimberly Miller and Wiley Collins as administrators of the estate of Mitchell Collins, deceased, appeal from the August 1, 2002 judgment of the Court of Common Pleas of Marion County, Ohio, granting summary judgment in favor of the defendants-appellees, James Trafzer, d.b.a. Trafzer Excavating, and Carl Price.

{¶ 2} On October 21, 1998, Mitchell Collins was working at a construction site on Villandry Drive in Marion County, Ohio, on behalf of his employer, Trafzer Excavating. As he was leaving for lunch, he was struck by a truck operated by Carl Price. At the time of the collision, the truck tractor was operating in reverse and pushing a lowboy trailer. As a result of this accident, Collins died.

{¶ 3} The estate of Mitchell Collins filed suit against Trafzer and Price, as well as other defendants, on October 20, 2000. After various other filings, motions, and dismissal entries, the matter proceeded solely on the employer-intentional-tort claim against Trafzer and Price. On March 4, 2002, Trafzer and Price filed a motion for summary judgment, which was granted by the trial court on August 1, 2002. This appeal followed, and the appellants now assert two assignments of error.

{¶ 4} "The trial court erred in determining that there were not material facts in dispute sufficient to deny defendants', James Trafzer and Carl Price's, motion for summary judgment on plaintiffs' claim for wrongful death based on the commission of an employer intentional tort. The court further erred in granting the motion for summary judgment and entering a dismissal on or about the 1st day of August, 2002."

{¶ 5} "The court erred in granting the motion for summary judgment on or about August 1st, 2002, in that the plaintiffs demonstrated to the trial court sufficient material facts in dispute by which a jury could have found as a matter of fact and as a matter of law that the defendants, James Trafzer and Carl Price, caused the wrongful death of the decedent, Mitchell Collins, due to the commission of an employer intentional tort."

{¶ 6} These two assignments of error both relate to the issue of summary judgment and, as such, will be discussed together. The standard for review of a grant of summary judgment is one of de novo review. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Thus, a grant of summary judgment will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.

{¶ 7} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits." Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the nonmoving party to show why summary judgment in favor of the moving party should not be rendered. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.

{¶ 8} In order to establish a workplace intentional tort by an employer against his employee, "the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if

the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. However, in order to demonstrate intent on the part of the employer, something more than "mere knowledge and appreciation of a risk" is required. Id. at paragraph two of the syllabus. Rather, "[a]s the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result." Id.

■ {¶ 9} This court's review of these assignments of error begins by initially noting that the complaint does not allege a cause of action against appellee Price. Therefore, the grant of summary judgment as it pertains to Price was proper. Accordingly, both assignments of error are overruled inasmuch as they pertain to Price. Having made this ruling, we proceed to determine whether summary judgment was improvidently granted as to appellee Trafzer Excavating.

■ {¶ 10} The first prong of the *Fyffe* test requires this court to determine whether a genuine issue of material fact exists as to whether Trafzer knew that a dangerous process, procedure, instrumentality, or condition within its business operation existed. We find this fact to be self-evident. At the time of the accident, Trafzer was engaged in the business of excavation. As part of this business, Trafzer owned and his employees operated a Peterbilt truck tractor, with a 48-foot lowboy trailer attached. One of the purposes of this semitrailer was to transport other pieces of machinery to various job sites. This included transporting a bulldozer, which was the piece of machinery that was on the lowboy trailer when it struck and killed Mitchell Collins. However, the tractor-trailer was not equipped with a back-up alarm that would signal when the truck was in reverse.

{¶ 11} Neither party disputes that Trafzer was aware of this information at the time of Collins's death. In addition, Price testified during his deposition that he was able to rely only on his side mirrors to view what was behind him as he drove the truck in reverse because the truck did not have a rear window and a rear-view mirror. Moreover, the appellants presented written evidence that Trafzer himself conducted a safety meeting on October 12, 1998, nine days before Collins was killed, regarding heavy equipment. During that meeting, the employees of Trafzer, including Price and Collins, were specifically instructed: "Be especially careful when backing up and be sure your back-up alarm is working

properly. If the equipment has blind spots which restrict the operator's field of vision or if the operator cannot clearly see the load, a spotter should be assigned to direct the operation."

{¶ 12} Undoubtedly, moving vehicles are dangerous instrumentalities, especially one the size of this tractor with the attached lowboy trailer. The fact that this vehicle was not equipped with a back-up alarm to warn others that this large vehicle was operating in reverse only increases the level of danger that this vehicle presented. Given these facts, the appellants presented evidence sufficient to demonstrate a genuine issue of material fact as to whether Trafzer knew that a dangerous process, procedure, instrumentality, or condition within its business operation existed.

{¶ 13} The second prong of the *Fyffe* test requires this court next to determine whether a genuine issue of material fact exists as to whether Trafzer knew that if Collins was subjected by his employment to this dangerous instrumentality, then harm to him would be a substantial certainty. The evidence reveals that no incident like the one that killed Collins had previously occurred during Trafzer's 25 years of operation. However, this court has recently noted that although the employer must have some notice that harm would be substantially certain, "notice need not take the form of a previous workplace incident." *Gibson v. Drainage Prods., Inc.*, Paulding App. No. 11–99–14, 2002-Ohio-6258, at ¶ 17, 2002 WL 31538968. Thus, "[t]he substantial certainty test does not establish a 'one free bite' rule * * *." Id.

{¶ 14} Price testified during his deposition that he could not see Collins behind his truck. He further testified that he could only use his side mirrors to see where he was going as he reversed the tractor-trailer because there was no view from a rear window due to the fact that the truck was equipped with a sleeper compartment rather than a rear window. As previously discussed, the appellants also presented evidence that Trafzer conducted a safety meeting less than two weeks before Collins was killed. During this meeting, Trafzer specifically warned that those operating heavy machinery in reverse should be "especially careful" and that they should ensure that the equipment's back-up alarm was working properly. In addition, these employees were instructed to have a spotter assist them if blind spots were present or if they were unable to clearly see their load.

{¶ 15} This information, when construed in a light most favorable to the appellants, evidences Trafzer's knowledge that if he subjected his employees to heavy equipment being moved in reverse without back-up alarms and/or a spotter to assist a driver with an obstructed view, then harm to an employee was substantially certain to occur. Although we agree with Trafzer's assertion that he was not substantially certain that an employee would walk behind a large

vehicle that he knew was traveling in reverse, the instructions Trafzer gave at the safety meeting create a genuine issue of material fact as to whether he knew harm to an employee was substantially certain to occur from a piece of heavy equipment operating in reverse without a back-up alarm or a spotter to assist a driver with an obstructed view as Price had. Therefore, the appellants satisfied the second prong of *Fyffe* for purposes of summary judgment.

[8] {¶ 16} The final element of the *Fyffe* test requires this court to determine whether a genuine issue of material fact exists as to whether Trafzer, under those circumstances, and with that knowledge, required Collins to continue to perform the dangerous task. Any type of construction business, including excavation, is fraught with risks. That is the nature of the business. However, *Fyffe* compels an employer not to subject an employee to certain dangers when the employer is substantially certain that harm will result from exposure to these dangers.

{¶ 17} The Ohio Supreme Court has held that "cases involving workplace intentional torts must be judged on the totality of the circumstances surrounding each incident." *Gibson v. Drainage Prods., Inc.*, 95 Ohio St.3d 171, 2002-Ohio-2008, 766 N.E.2d 982, at ¶ 27. Here, Collins was on his way to lunch with another Trafzer employee, Randy Parsell, when the two men stopped to talk with Price. Collins and Parsell walked alongside Price as he was slowly backing the tractor-trailer, all the while discussing their lunch plans with Price. Collins and Parsell ended their conversation with Price and began walking at a pace faster than that of the truck. Price testified that he last noticed the two men when he looked in his driver-side mirror. He then checked his other side mirror, and when he looked in the driver-side mirror again, he did not see either of the men. According to Parsell, he walked to his truck, which was located behind and to the side of the tractor-trailer. Parsell stated that he turned around to find where Collins was but did not see him until he noticed Collins being dragged by the tractor-trailer. Parsell immediately began shouting for Price to stop, which Price did within a matter of seconds. However, Collins's injuries were too severe, and he died as a result of his injuries.

{¶ 18} At the time of the accident, Collins was going to lunch. He was not required to be behind the moving truck or to even be in the vicinity of its line of travel. In addition, Collins was aware that the truck was traveling in reverse and was aware of the path the truck was taking. Thus, the existence of back-up alarms would not have made Collins any more aware of this fact than he actually was. Moreover, Collins was not performing any task required of him by his employer at the time he was killed. Thus, the appellant has failed to demonstrate any genuine issue of material fact as to the third prong of *Fyffe*, and

summary judgment in favor of the appellees was proper. Accordingly, both assignments of error are overruled.

{¶ 19} For these reasons, the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.

Judgment affirmed.

THOMAS F. BRYANT and WALTERS, JJ., concur.