OPINION
{¶ 1} Plaintiff-Appellant, Lisa M. Geggie, Administratrix, appeals a judgment of the Hancock County Court of Common Pleas, granting Defendant-Appellee's, Cooper Tire and Rubber Company ("Cooper"), motion for summary judgment. On appeal, Appellant contends that the trial court erred in granting summary judgment, because there was a genuine issue of material fact. Additionally, Appellant asserts that the trial court abused its discretion in withholding certain documents from discovery. Finding that there is no genuine issue of material fact and that the trial court did not abuse its discretion, we affirm the judgment of the trial court.
 {¶ 2} On July 14, 1999, Richard Worstine was found with his torso caught between the tailstock and the drum of the first stage tire building machine ("machine") at Cooper. Worstine was an employee of Cooper, who was working as a tire builder at the time of the accident.
 {¶ 3} The machine functioned so that an employee would place beads, which are rubber tubes that attach to the tire rim, on the headstock and tailstock. The employee would either push a button or step on a pedal, which caused the tailstock to approach the drum, a hollow cylinder that would expand as the tailstock approached. The tailstock would stop short of the drum; the tire builder would then pull a ply of rubber off of a server, press a pedal to spin the drum around one time. At that point the tire builder would cut the ply of rubber and set it on the drum. This process was then repeated with another ply of rubber around the drum. The tire builder would then step off the safety matt to activate the bead setter. The beads would then be set, by attaching to the drum on both sides. When the beads were set, the employee would spin another ply of rubber over the drum, by pulling down two wings of rubber and pressing another button or pedal to spin the drum. The employee would next cut the sidewalls and attach them to the tire carcass. After either pushing a button or stepping on a pedal to activate the stitcher, all of the parts would be attached together by the stitcher. When the stitching was complete, the tailstock would move away from the drum so that the employee could remove the tire carcass and start a new process.
 {¶ 4} Upon finding Worstine in the machine, the machine had a complete tire carcass on it. No one in the plant had witnessed the accident. In an attempt to remove Worstine from the machine, the employees powered the machine off and on; however, the machine failed to release him. To get Worstine out of the machine, the employees had to bleed the air out of the machine by manually opening a butterfly valve. After all of the air was bled out of the machine, the other employees were able to pull the tailstock and the drum apart so that Worstine's body could be taken out of the machine.
 {¶ 5} After getting Worstine out of the machine, two Cooper employees, who were also paramedics, initiated CPR on Worstine at the scene. Worstine was then transported to Blanchard Valley Hospital, in Findlay, Ohio. Subsequently, Worstine was life-flighted to St. Vincent Hospital, in Toledo, Ohio, where he died on July 16, 1999.
 {¶ 6} At the beginning of July 1999, prior to the accident, a work order had been entered into Cooper's computer system for the repair of a malfunctioning main air valve on the machine that Worstine was operating on the day of the accident. The work order was entered because the main air valve would not release air when the machine was powered off. The work order on Worstine's machine contained a priority code of eight. Cooper's priority code for work orders ranged from one to ten, with a one being the highest priority. The machine had been scheduled for repair during the July 4th plant shut down; however, it was not fixed during that time. Employees had continued operating the machine from the time the work order was entered until the time of Worstine's accident.
 {¶ 7} In July of 2001, Appellant filed a complaint against Cooper and U.S. Automation Company.[1] Appellant's complaint alleged that Cooper was liable for a workplace intentional tort, based on the malfunctioning air valve on the machine. In March of 2004, Cooper filed a motion for summary judgment. Subsequently, Appellant filed a motion in response to Cooper's motion for summary judgment. Upon review of the parties' motions as well as the depositions filed in this case, the trial court granted Cooper's motion for summary judgment. It is from this judgment Appellant appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I When appellant alleged a workplace intentional tort and elicitedadmissible evidence that Richard Worstine was killed by a machine in hisplace of employment, and the employer knew that the machine was unsafe dueto the non-functioning safety device, and had issued a work order torepair the safety advice, and the failure of the safety device was aproximate cause of Worstine's death, the trial court erred in grantingsummary judgment to defendant, employer.
 Assignment of Error No. II The Court erroneously determined that documents withheld from discoveryby appellees were privileged or otherwise not subject to the production.
 Assignment of Error No. I {¶ 8} In the first assignment of error, Appellant asserts that the trial court erred in granting Cooper's motion for summary judgment.
 Standard of Review {¶ 9} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. Of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) that there is no genuine issue as to any material fact; (2) that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v. Harwick Chemical Corp.,73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.
 {¶ 10} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. AthensCity Clerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Workplace Intentional Tort {¶ 11} In Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, 119, the Ohio Supreme Court held:
[I]n order to establish `intent' for the purpose of proving theexistence of an intentional tort committed by an employer against anemployee, the following must be demonstrated: (1) the employer hadknowledge of the existence of a dangerous process, procedure,instrumentality, or condition within its business operation; (2) theemployer had knowledge that if the employee is subjected by hisemployment to such danger then harm to the employee will be a substantialcertainty; and (3) that the employer, with such knowledge and under suchcircumstances, did act to require the employee to continue to perform thedangerous task.
 {¶ 12} Additionally, the Fyffe Court outlined the proof necessary to establish intent on the part of the employer, stating that:
To establish an intentional tort of an employer, proof beyond thatrequired to prove negligence and beyond that to prove recklessness mustbe established. Where the employer acts despite his knowledge of somerisk, his conduct may be negligence. As the probability increases thatparticular consequences may follow, then the employer's conduct may becharacterized as recklessness. As the probability that the consequenceswill follow further increases, and the employer knows that injuries toemployees are certain or substantially certain to result from theprocess, procedure or condition and he still proceeds, he is treated bythe law as if he had in fact desired to produce the result. However, themere knowledge and appreciation of a risk — something short ofsubstantial certainty — is not intent.
 {¶ 13} In the case sub judice, Appellant asserts that Cooper's actions rise to the level of a workplace intentional tort. Specifically, Appellant argues that the machine's "industry standard" safety device or "e-stop" was not working, which Cooper knew about and made a conscious decision not to remedy. Additionally, Appellant argues that the malfunctioning safety device was the cause of Worstine's death. Upon review of the record, we find that, even when viewing the evidence in the light most favorable to Appellant, she is unable to show that Cooper's actions or lack thereof rise to such a level. Specifically, we find that Appellant is unable to meet the second element of the Fyffe test.
 {¶ 14} While Appellant asserts that the machine's "industry standard" safety device or "e-stop" was malfunctioning, we find that Appellant misstates the record to support her argument. The e-stop function is essentially a kill switch, which powers a machine off in case of an accident. Upon review of the depositions and supporting documents filed in this case, it is clear from the record that the machine's e-stop button and pedal was working properly at the time of the accident. However, the machine did have a main air supply valve which was malfunctioning prior to Worstine's accident. As noted above, in early July 1999, prior to the accident, a work order had been entered, stating that the main air valve was to be replaced. The Cooper work order for the machine, which has been marked and filed in this cause, noted, "main air supply valve will not shut off when power is off, needs replaced, marked with a tag." Additionally, several Cooper maintenance employees testified that it was the air valve and not the e-stop that was malfunctioning. Thus, while Appellant argues that the e-stop safety device was malfunctioning, that statement is not supported by the record.
 {¶ 15} While is clear that it was not the e-stop that was malfunctioning, it is questionable as to whether the malfunctioning air valve would affect the machine's ability to properly shut down. Essentially, there is conflicting testimony as to whether the e-stop would bleed the air from the machine. Therefore, the question for this Court to consider is whether the machine's malfunctioning air valve, in conjunction with Cooper's knowledge of that defect, rises to the level of a workplace intentional tort.
 {¶ 16} Considering the first element, Appellant is required to show that Cooper had knowledge of a dangerous process, procedure, instrumentality or condition within its business. It is clear that based upon the July 1999 work order, Cooper was on notice and had knowledge of malfunctioning air valve. However as noted above, upon review of the record, we agree with the trial court that there are genuine issues of material fact as to whether the main air valve was part of the e-stop system and, as such, whether the malfunctioning air valve created a safety hazard. Accordingly, there is a genuine issue of material fact as to whether the malfunctioning air valve created a dangerous condition.
 {¶ 17} Second, Appellant must show that with such knowledge, Cooper knew that if an employee were subjected to such dangerous process, procedure, instrumentality or condition, then harm to the employee was substantially certain. In establishing an intentional tort of an employer, "proof beyond that required to prove negligence and beyond that to prove recklessness must be established." Fyffe, 59 Ohio St.3d at para. two of the syllabus. "Mere knowledge and appreciation of a risk" is not enough to satisfy the mental state of substantial certainty. Id. Rather, to meet the burden of proof regarding this second element of an intentional tort, Appellant was required to demonstrate that Cooper had "actual knowledge of the exact dangers which ultimately caused injury."Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172.
 {¶ 18} Here it is undisputed that Cooper knew about the malfunctioning air valve; however, there is no evidence that Cooper knew that the malfunctioning air valve was substantially certain to cause any injury, specifically the type of injury that Worstine sustained.
 {¶ 19} First, we are persuaded by the fact that there is no evidence that any type of similar accident had ever occurred at either Cooper or in the tire making industry. We are aware that it is well established that the fact that there were no prior injuries similar to that of a plaintiff is not dispositive of the issue of substantial certainty. Coxv. Barsplice Products, Inc. (June 15, 2001), 2d Dist. No. 2001-CA-1. In fact, this Court has held that "although the employer must have some notice that harm would be substantially certain, `notice need not take the form of a pervious workplace incident.'" Miller v. Trafzer,150 Ohio App.3d 695, 2002-Ohio-6800, at ¶ 13, citing Gibson v.Drainage Products, Inc., 3d Dist. No. 11-99-14, 2002-Ohio-6258, at ¶ 17.
 {¶ 20} Nevertheless, while the fact that there were no prior incidents is not dispositive in this case, we find the testimony of the machine's manufacturer to be enlightening. Robert Irwin, the owner of the company that manufactured the machine, specifically stated that since the company had been manufacturing the tire building machines, they had never heard of another incident of a person being crushed in the machine. Additionally, he stated that he had been involved in the tire-making industry generally for approximately thirty-six years and that he had never heard of a person ever being crushed inside a tire making machine.
 {¶ 21} Additionally, several Cooper employees as well as Irwin testified that there was no foreseeable reason for a person to ever place their body into the machine in the way that Worstine did. Several of the tire-builders, who were on site on the day of the accident, testified that there was simply no reason to do such a thing. Finally, we agree with the trial court's finding that Cooper's low work order priority rating shows that Cooper did not deem the air valve problem to be a safety hazard.
 {¶ 22} Thus, based on Cooper's low priority rating, the testimonies that this was not a normal function required by other tire-builders and the testimony by Irwin that this type of accident was essentially unthinkable in the tire-building industry, we cannot say that Cooper knew that the malfunctioning air valve was substantially certain to cause an injury. Appellant has put forth no evidence showing that Cooper had any knowledge that the malfunctioning air valve, itself, was substantially certain to cause an injury. Accordingly, we find that there is no genuine issue of material fact as to whether Cooper knew to a substantial certainty that an employee would be injured because of the malfunctioning air valve.
 {¶ 23} Having found that Appellant is unable to establish the second element of the Fyffe test, we decline to address the third element of that test. Accordingly, the first assignment of error is overruled.
 Assignment of Error No. II {¶ 24} In the second assignment of error, Appellant argues that the trial court erred in denying Appellant's motion to compel discovery.
 {¶ 25} The Rules of Civil Procedure provide liberal discovery provisions. Pursuant to Civ.R. 26(B)(1), the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Notwithstanding this wide scope of permissible discovery, trial courts are given broad discretion in the management of discovery.State ex rel. Daggett v. Gessaman (1973), 34 Ohio St.2d 55, 57. Thus, an appellate court reviews discovery issues pursuant to an abuse of discretion standard. Hence, the decision of a trial court regarding discovery will not be disturbed unless such decision is unreasonable, arbitrary, or capricious. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 26} In March of 2003, Appellant filed a motion to compel Cooper to turn over certain documents that were created after Worstine's accident. In its motion to compel, Appellant requested the following:
Plaintiff moves the Court for an order compelling Defendant Cooper toproduce documents set forth in its Privilege Log, or in the alternativethat defendant produce the documents in camera for the Court, or a personappointed by the Court, determine whether the claims of privilegeappropriately apply to any of the documents.
Subsequently, Cooper filed its response to Appellant's motion to compel. With its motion to compel, Cooper provided the materials that Appellant sought to discover, as well as a sheet containing the date, document type, author, recipient, description as well as the privilege Cooper was asserting for each document within the privilege log. Cooper claimed that the documents provided should be excluded because they were work-product and because they were protected by attorney client and self-evaluating privileges.
 {¶ 27} On July 17, 2003, after reviewing the privilege log in camera, the trial court filed a judgment entry denying Appellant's motion to compel and finding that the privilege log was to remain under seal. In its judgment entry, the trial court specifically notes that "[t]his day this cause was before the Court" and that "[p]laintiff was represented by her counsel of record" and "defendant, Cooper Tire, was represented by its counsel of record." Finally, the trial court notes that "[t]hereupon, the Court issued its ruling as to plaintiff's amended motion to compel discovery."
 {¶ 28} From the trial court's decision, it appears that a hearing was held. While Appellant attempts to argue that the hearing was held in camera and that she was not present, it appears that based on the trial court's own judgment entry a hearing was held in open court and that plaintiff was present. As noted above, the judgment entry states that the matter came before the court and that attorneys for both Appellee and Appellant were present. We have not been provided with any record of those proceedings. It is Appellant's duty to order from the reporter the necessary portions of the transcript. App.R. 9(B). In absence of a transcript, an appellate court is required to assume the regularity of the lower court's proceedings. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199.
 {¶ 29} Thus, upon review of the privilege log, we are satisfied that the trial court did not abuse its discretion in maintaining the documents under seal. Looking at the documents in the privilege log as well as the privilege asserted for each, we cannot find that the trial court abused its discretion in finding that these documents were privileged as work product or under the attorney client privilege.
 {¶ 30} Turning to the asserted privileges, Appellant asserts that the trial court erred in considering the self-evaluating privilege. In its motion in opposition to Appellant's motion to compel, Cooper claimed that many of the documents in the privilege log should be protected by the self-evaluating privilege. Essentially, Cooper argued that a privilege for records created by a corporation or other entity for the sole purpose of self-analysis is well recognized and strongly grounded in public policy. On appeal, Appellant correctly points out that the self-evaluating privilege has yet to be recognized in Ohio. See State, ex rel.Celebrezze, v. CECOS Internatl., Inc. (1990), 66 Ohio App.3d 262, 264. However, as noted above, without the transcripts, which the trial court referred to in its judgment entry, we do not know that the trial court based its decision to exclude these documents upon the self-evaluating privilege. Thus, presuming regularity, we cannot find that the trial court abused its discretion or that it applied an improper standard to Appellant's motion to compel.
 {¶ 31} Turning to the work product and attorney-client privilege, we cannot find that the trial court erred in excluding the documents in the privilege log under those privileges as well.
 {¶ 32} The attorney-client privilege provides that "[a]n attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, [shall not testify] except that the attorney may testify by express consent of the client * * * and except that, if the client voluntarily testifies or is deemed by section2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject." R.C. 2317.02(A). The attorney-client privilege allows a client to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and the client in the course of seeking or rendering legal advice. Frank W. Schaefer, Inc. v. C. GarfieldMitchell Agency, Inc. (1992), 82 Ohio App.3d 322, 329. The privilege belongs to the client and only materials which involve communications with his attorney are protected. Id. Finally, "[a]lthough the language of R.C. 2317.02(A) speaks only to the prohibition of testimony of privileged matters, it has nonetheless been stated that wherever a claim of privilege would be proper at the actual trial of the case, it is proper at the discovery stage." Id., citing to 36 Ohio Jurisprudence 3d (1982), Discovery and Depositions, Section 33.
 {¶ 33} R.C. 2317.021 extends the attorney-client privilege to corporations as clients. "Because that section defines a client as a corporation that `communicates, either directly or through an agent, employee, or other representative, with' an attorney, the statute acknowledges that corporations or companies, as legal entities, can only communicate with counsel through their employees or agents." Shaffer v.OhioHealth Corp., 10th Dist. No. 03AP-102, 2004-Ohio-63, at ¶ 10.
 {¶ 34} Upon review of the documents in the privilege log, which Cooper has listed as falling within the attorney client privilege, we cannot say that the trial court abused its discretion in excluding these documents. Each of the documents includes communications between Cooper and its legal counsel. Thus, without a waiver by Cooper, these documents remain privileged.
 {¶ 35} For the remaining documents, Cooper asserted that each was work product. "The work-product privilege is a civil privilege, arising by virtue of Civ.R. 26(B)(3). It provides that a party may obtain discovery of materials `prepared in anticipation of litigation or for trial' only upon a showing of good cause." State v. Kemper, 158 Ohio App.3d 185,188, 2004-Ohio-4050, at ¶ 20. Upon review of the remaining documents, we are satisfied that the trial court did not abuse its discretion in finding the documents were to remain sealed as work product. First, Cooper claimed that each of the documents were prepared in anticipation of litigation. Additionally, Appellant has failed assert a showing of good cause.
 {¶ 36} Finally, even if we were to find that the trial court had abused its discretion in excluding the materials in the privilege log from being discovered, such an abuse of discretion would be harmless. In other words, a trial court's error provides a basis for reversal only if the error is materially prejudicial, affecting a substantial right of the complaining party. Civ.R. 61. When avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party. Fada v. Information Sys. Networks Corp. (1994),98 Ohio App.3d 785, 792.
 {¶ 37} Here, after reviewing the documents in the privilege log, we cannot find that any of the materials would have raised a genuine issue of fact as to whether Cooper is liable for a workplace intentional tort. All of the documents were created after the accident and none of the documents contain any information showing that Cooper knew that if an employee were subjected to such dangerous process, procedure, instrumentality or condition, then harm to the employee was substantially certain. Accordingly, the second assignment of error is overruled.
 {¶ 38} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 CUPP, P.J., concurs.
 SHAW, J., concurs in judgment only.
[1] U.S. Automation is the company that manufactured the machine in which Worstine's body was caught. In February of 2003, Appellant and U.S. Automation jointly entered a stipulation for dismissal and judgment entry. That entry dismissed, with prejudice, Appellant's case against U.S. Automation. Accordingly, U.S. Automation is not a party to this appeal.