OPINION
{¶ 1} Plaintiff-appellant/cross-appellee Patricia J. Adams appeals from the Mahoning County Common Pleas Court's grant of summary judgment for defendant-appellee/cross-appellant Forum Health/Western Reserve Care System (Forum Health). Defendant/cross-appellant City of Youngstown (Youngstown) filed a cross-appeal in this case against Forum Health alleging that the trial court improperly granted summary judgment on Youngstown's cross-claim for indemnity and/or contribution. The issue raised in the direct appeal is whether Adams presented a genuine issue of material fact as to whether there was an actionable employer intentional tort cause of action against Forum Health. Specifically, we are asked to determine whether being injured when crossing a public street can be an actionable employer intentional tort. For the reasons expressed below, we find that in this situation it is not. This determination renders the issue raised in Youngstown's cross-appeal moot. The judgment of the trial court for Forum Health is hereby affirmed.
 STATEMENT OF FACTS {¶ 2} Adams worked for Forum Health at their hospital (Northside Hospital) located on Gypsy Lane in Youngstown, Ohio. One of the hospital employee parking lots (South Parking Lot) is located across the street from the hospital. There is a mid-block crosswalk on Gypsy Lane allowing pedestrians to cross from that parking lot to the hospital. It is undisputed that Gypsy Lane and its mid-block crosswalk were established and maintained by the City of Youngstown.
 {¶ 3} On April 4, 2000, Adams arrived for work and parked in the South Parking Lot. Adams crossed Gypsy Lane using the mid-block crosswalk. While in the crosswalk, Adams was struck by an unidentified automobile causing Adams to suffer serious injuries.
 {¶ 4} As a result of her injuries, Adams filed a complaint against the City of Youngstown, Forum Health and the unidentified driver. In the complaint, Adams alleged an employer intentional tort against Forum Health. She claimed that Forum Health knew that the crosswalk was a hazardous condition that was so dangerous that injury was substantially certain to occur and with such knowledge intentionally required Adams to continue to be exposed to such hazard. The cause of action asserted against Youngstown alleged that Youngstown was negligent, careless, wanton and/or reckless in establishing and maintaining the crosswalk, that it created a nuisance in establishing and/or maintaining the crosswalk, and that it failed to comply with the Ohio Manual of Uniform Traffic Control Devices. The complaint also asserted a derivative claim on behalf of Adams' husband for loss of consortium. Both Forum Health and the City of Youngstown filed answers asserting cross-claims against each other for contribution and/or indemnity.
 {¶ 5} The City of Youngstown filed a motion for summary judgment on Adams' claims against it and also sought summary judgment on Forum Health's cross-claim. Forum Health then filed a motion for summary judgment on Adams' employer intentional tort claim, a motion in opposition to Youngstown's motion for summary judgment, and a motion for summary judgment on Youngstown's cross-claim. Adams then filed motions in opposition to Youngstown and Forum Health's motions for summary judgment.
 {¶ 6} On October 4, 2004, the trial court denied Youngstown's motion for summary judgment against Adams.[1] On November 19, 2004, the trial court ruled on Forum Health's motions for summary judgment. It stated, "Forum Health neither had knowledge to a substantial certainty that an injury would occur or were responsible for the construction and maintenance of the crosswalk where the injury occurred. Consequently, Defendant, Forum Health's, motions for summary judgment in the above captioned case against Plaintiff, Patricia J. Adams, and Defendant, City of Youngstown are hereby sustained."
 {¶ 7} Adams appeals from that ruling asserting that there are genuine issues of material fact on its employer intentional tort cause of action. Youngstown cross-appeals claiming that if this court finds that there are genuine issues of material fact on the employer intentional tort cause of action and reverses the trial court's decision, it must also reverse the trial court's decision on the cross-claims asserted by Youngstown against Forum Health.
 ASSIGNMENT OF ERROR {¶ 8} "THE TRIAL COURT ERRED BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE FORUM HEALTH/WESTERN RESERVE CARE SYSTEM."
 {¶ 9} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. AmericanIndustries Resources Corp. (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsonsv. Fleming (1994), 68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated.Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248.
 {¶ 10} The claim asserted against Forum Health is an employer intentional tort. In order to avoid summary judgment in an employer intentional tort action, the plaintiff must present evidence to establish all three of the elements required in an intentional tort claim against an employer. The Ohio Supreme Court has articulated these elements as: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3), that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Fyffe v.Jeno's (1991), 59 Ohio St.3d 115, paragraph one of the syllabus, citing Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100 (modifying paragraph five of the syllabus).
 {¶ 11} Adams contends that the evidence establishes that genuine issues of material fact exist as to all three elements. Forum Health contends that there are not any issues of material fact and, as a matter of law, it is entitled to judgment.
 {¶ 12} The first element is that the employer had knowledge that a dangerous process, procedure, instrumentality or condition existed within its business operation. Fyffe,59 Ohio St.3d 115. Under this element the alleged dangerous condition, the crosswalk, must be within Forum Health's business operation.
For the crosswalk to be within Forum Health's business operation, it is fundamental that it is within Forum Health's control. Thus, in order for Adams to meet the first element of Fyffe, the evidence must show that the mid-block crosswalk was within Forum Health's control.
 {¶ 13} The undisputed evidence is: 1) the crosswalk is located on Gypsy Lane; 2) Gypsy Lane is a public street maintained by the City of Youngstown; 3) the South Parking Lot is located on Gypsy Lane across the street from the hospital; and 4) a sidewalk built by Forum Health runs from the South Parking Lot to the crosswalk on Gypsy Lane.
 {¶ 14} The key factor is that Gypsy Lane, and thus, the crosswalk is a public street maintained by Youngstown. Deposition testimony reveals that Youngstown maintains the crosswalk. Carmen Conglose, Deputy Director of Public Works for Youngstown, stated that Youngstown created the crosswalk on October 27, 1976, when it passed City Ordinance No. 93.010. (Conglose Depo. 78; Exhibit 17). Conglose and Thomas Carchedi, Security Manager for Forum Health, stated that maintenance of the crosswalk was within Youngstown's control. (Conglose Depo. 81; Carchedi Depo. 86-87). It was painted and the streetlights were installed by the City of Youngstown. (Carchedi Depo. 27-29; Conglose Depo. 82). Further, Conglose stated that only the city has the authority to erect traffic lights, not a private entity such as Forum Health. (Conglose Depo. 80-82).
 {¶ 15} The foregoing testimony is consistent with and supported by state statutes and local ordinances. R.C. 723.01
states that crosswalks are a creation of state statute and are subject to control by the municipality. R.C. 4511.11(A) provides that local authorities must place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices. R.C. 4511.16(A) states that, "No person shall place, maintain, or display upon or in view of any highway any unauthorized sign, signal, marking, or device which purports to be, is an imitation of, or resembles a traffic control device * * * or which attempts to direct the movement of traffic * * *."[2]
 {¶ 16} Youngstown City Ordinance 303.02 provides that City police officers have authority to direct and regulate traffic. Youngstown City Ordinance 305.01 authorizes the City Engineering Department to close or restrict street use when required for public safety. Youngstown City Ordinance 301.46 defines "traffic control devices" as "all flaggers, signs, signals, markings and devices place or erected by authority of a public body orofficial having jurisdiction for the purpose of regulating,warning or guiding traffic * * *." (Emphasis added). Youngstown City Ordinance 301.47 defines a "traffic control signal" as "any device, whether manually, electrically or mechanically operated by which traffic is alternately directed to stop, to proceed, to change direction or not to change direction."[3]
 {¶ 17} Considering all of the above, we must conclude that the crosswalk is not within Forum Health's business operation. Clearly, the installation of traffic control devices, which includes signals, are to be erected by the public body with authority to do so, not by a private entity. Moreover, R.C.4511.16 makes it illegal for a private entity to place an unauthorized traffic control device on a public street.[4]
 {¶ 18} While it is true that Forum Health thought about erecting a skywalk crosswalk and had implemented a crossing guard program (that only lasted a short duration), these factors do not make the crosswalk fall within Forum Health's business operation.
 {¶ 19} First, the crossing guard program was established to help employees safely cross the mid-block crosswalk. It was operated by a designated Forum Health employee that stopped traffic while the employees crossed the crosswalk. This program only lasted for a short duration because Forum Health thought it would be violating the above statutes and ordinances. This belief was probably correct when considering these statutes and ordinances. For instance, the designated Forum Health employee stopping traffic could be considered a traffic control device and signal since the employee would be directing traffic. However, it would not fall within the definitions provided by the statutes and ordinances because it was not put in place by the authority of a public body having the jurisdiction to do so.[5] Thus, considering all of this and the lack of authority that Forum Health had over the crosswalk and placing signals there, the crossing guard program does not provide evidence that the crosswalk was within Forum Health's business operation. Rather, it evidences Forum Health's lack of control over the crosswalk.
 {¶ 20} Second, as to the skywalk crosswalk, this also does not necessarily evidence that crossing Gypsy Lane to go from the South Parking Lot to the hospital was within Forum Health's business operation. As explained above, the maintenance of the crosswalk was within Youngstown's, not Forum Health's control. A private entity, or for that matter a private citizen, must be able to place some reliance on the public body to maintain the roadways in a manner that is safe. See Dollar Savings TrustCo. v. Youngstown (1969), 19 Ohio App.2d 225, 231 (stating where a citizen approaches a crosswalk, "he has assurance that public authority has designated such spot for pedestrian crossing"). Additional measures made by the private entity or citizen should not be a necessity if the public body is performing its duty in accordance with the statutes. Thus, even though a skywalk crosswalk was considered by Forum Health, this consideration does not make crossing a public street within its business operation.
 {¶ 21} Moreover, egress and ingress over a public street to one's place of work, in this situation, does not fall within that business' operation because the business lacks control over the public domain. The fact that Forum Health employees use the crosswalk does not make the control of it fall within Forum Health's business operation. How an employee arrives at their place of work is within that employee's control, not the business's control. When the alleged dangerous condition is within someone else's control, such as a customer, other business, or government entity, it will not fall within the employer's business operation. Dunn v. Tri County Distributing
(Aug. 2, 1990), 7th Dist. No. 89CA148 (finding that a delivery person's injury caused from a customer's ice and snow covered parking lot was not within the employer's business operation when the employee admitted that the snow and ice covered parking lot was within the customer's control).
 {¶ 22} Consequently, for all the reasons above, the first element of Fyffe is not met. As aforementioned, all three elements of Fyffe must be met in order for Adams to survive summary judgment. Fyffe, 50 Ohio St.3d 115. Thus, since the first element was not met, the trial court did not err in granting summary judgment for Forum Health. This assignment of error lacks merit.
 CROSS-APPEAL ASSIGNMENT OF ERROR {¶ 23} "THE TRIAL COURT ERRED WHEN IT GRANTED FORUM HEALTH AND WESTERN RESERVE HEALTH CARE SYSTEM'S ("FORUM HEALTH") MOTION FOR SUMMARY JUDGMENT ON THE CITY OF YOUNGSTOWN'S CLAIMS FOR CONTRIBUTION AND/OR INDEMNITY."
 {¶ 24} Our disposition of Adam's assignment of error renders this cross-assignment of error moot. A right to contribution and/or indemnity does not exist against a party that is not liable on the underlying cause of action. As such, the cross-appeal will not be addressed.
 {¶ 25} For the foregoing reasons, the judgment of the trial court for Forum Health is hereby affirmed. The cross-appeal is dismissed as moot.
Donofrio, P.J., concurs.
Waite, J., concurs.
[1] That ruling was appealed in case number 05MA22. However, we determined that the trial court's decision was not a final appealable order. The basis of the ruling was that the trial court's decision on immunity occurred during the time when the statute on final appealable orders did not state that such decision was a final appealable order.
[2] A violation of this statute is a minor misdemeanor. R.C.4511.16(B).
[3] The definitions in Youngstown City Ordinance 301.46 and 301.47 are identical to R.C. 4511.01 (QQ) and (RR).
[4] R.C. 4511.16 provides: "This section does not prohibit either the erection upon private property adjacent to highways of signs giving useful directional information and of a type that cannot be mistaken for traffic control devices or the erection upon private property of traffic control devices by the owner of real property in accordance with sections 4511.211 and 4511.432
of the Revised Code." R.C. 4511.211 and 4511.432 direct when stop signs and speed limits may be erected on private roads and driveways.
[5] School crossing guard programs also act as a traffic control device or signal. However, these types of programs are permitted so long as the school crossing guards are invested with the authority to direct, control or regulate traffic. Youngstown City Ordinance 303.02. Thus, nothing in this opinion indicates that school crossing guard programs would violate the law.